737 So.2d 615 (1999)
GTECH CORPORATION, Appellant,
v.
STATE of Florida DEPARTMENT OF the LOTTERY and Automated Wagering International, Inc, Appellees.
No. 98-1155.
District Court of Appeal of Florida, First District.
July 22, 1999.
*616 Thomas Panza, Mark A. Emanuele and Deborah Susan Platz of Panza, Maurer, Maynard & Neel, Tallahassee, and John K. Aurell, John R. Beranek and Martin B. Sipple of Ausley & McMullen, Tallahassee, for Appellant.
Robert A. Butterworth, Attorney General and Amelia L. Beisner, Assistant Attorney General, Office of the Attorney General, Tallahassee, for Appellee State of Florida, Department of the Lottery.
Martha Harrell Chumbler, Michael P. Donaldson and Michael Carlson of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, Tallahassee, for Appellee Automated Wagering International, Inc.
PADOVANO, J.
This is an appeal from a final administrative order by the Department of the Lottery awarding a state contract to Automated Wagering International, Inc., and dismissing a bid protest by GTECH Corporation. Among other points on appeal, GTECH contends that the Department erred in referring the contract proposals *617 back to the same evaluation committee for reconsideration after the committee members had testified in a bid protest hearing. Because we conclude that this remedy did not violate the constitutional or statutory rights of the parties, we affirm the final order.

I.
The parties were competing for a lucrative contract to provide computerized gaming systems and related services for the Florida Lottery. The Department published a formal request for proposals on September 29, 1995, and Automated Wagering and GTECH were the only providers who responded. As required for a contract of this amount, the Secretary of the Lottery appointed a committee to evaluate the proposals and rank them in order of preference. The committee consisted of six members, three of whom were lottery employees.
The Department granted the committee considerable discretion to select the provider. According to the procedure outlined in the request for proposals, the Department was required to award the contract to the most qualified respondent, as determined by the committee. The Secretary of the Lottery retained the authority to reject the committee's decision, but only if she found that the entire process was not the best method of obtaining the desired gaming system and services.
Each responsive bid was evaluated by a numerical scoring system based on a total score of one hundred points. Twenty points were available on a mathematical formula keyed to the price of the bid, and the remaining eighty points were to be scored by the evaluation committee. As provided in the request for proposals, the committee scored specific aspects of the responses including the respondents' experience in lottery operations, the technical specifications of the proposed systems, the operational and security features of the systems, and the marketing features. As a part of the evaluation, the committee also conducted on-site visits to allow the respondents to demonstrate their systems.
When the evaluations were completed, the committee announced that Automated Wagering was the more qualified respondent. The totals were close, but Automated Wagering received a higher score on the parts of the responses that were evaluated by the committee. Automated Wagering also had a higher number of points based on the price of the contract, because it had submitted the lower of the two bids. The Department accepted the committee's recommendation and served notice on October 31, 1996, of its intent to award the contract to Automated Wagering. GTECH timely filed a bid protest on November 5, 1996, and Automated Wagering was granted leave to intervene in the proceeding.
The administrative law judge then conducted a formal hearing which lasted approximately three weeks. GTECH presented testimony and other evidence in an effort to show that the committee members made certain material errors in evaluating the responses. Some of the committee members were also called to testify at the hearing. One committee member, an employee of the lottery, gave expert opinion testimony in support of the decision to award the contract to Automated Wagering. Another was reluctant to testify, and she was declared a hostile witness. Generally, as a consequence of the bid protest, the committee members were forced to explain their decision to the administrative law judge.
When the hearing was concluded, the administrative law judge rejected most of the allegations in the bid protest. However, the judge did find that certain aspects of the evaluation and scoring failed to comply with the Department's request for proposals. Based on this finding, the judge entered an order on May 5, 1997, recommending that the evaluation committee reconvene to evaluate and score specific aspects of the two proposals in a manner *618 that complied with the request for proposals. Additionally, the judge recommended that Automated Wagering be required to resubmit one subsection of its proposal, relating to personnel to be utilized on the contract, and that the committee then evaluate and score the resubmitted information.
The Department entered an order on June 4, 1997, adopting the administrative law judge's findings of fact and conclusions of law. Although this order is styled as a final order, the effect of the Department's decision was to approve of the judge's recommendation that the case be sent back to the committee for further evaluation. GTECH appealed the order to this court, but the appeal was dismissed involuntarily. Because the order did not fully dispose of the proceeding before the agency, it was not a final order and it was not, therefore, subject to review by appeal.
The evaluation committee convened once again to reconsider the proposals as directed by the Department. When the proposals were evaluated for the second time, Automated Wagering remained the high scorer. Once again, the Department issued a notice that it was awarding the contract to Automated Wagering. GTECH filed a protest as to this second notice, and the case was transferred back to the Division of Administrative Hearings. The same administrative law judge was assigned and Automated Wagering was, once again, allowed to intervene.
Before the second formal hearing, the administrative law judge advised counsel that he wished to limit the scope of the hearing to prevent retrial of the issues already decided in the first bid protest. The parties were allowed to present evidence and argument on the rescoring and other matters occurring after the first hearing. Additionally, the judge allowed the parties to question the committee members to determine whether the positions they took in the first bid protest caused them to become biased.
When this hearing was concluded, the administrative law judge found that the reconvened evaluation had been conducted properly under the directions given in the first order and that, aside from minor errors not affecting the outcome of the scoring, the evaluation committee's scoring complied with the requirements of the law. The judge also found that the controversy raised in the original bid protest proceeding did not prevent the committee members from fairly considering the proposals according to the Department's first order. The judge specially found that there was no evidence of bias on the part of any committee member.
Based on these findings and the findings in the original order, the administrative law judge entered an order recommending that the contract be awarded to Automated Wagering. The Department accepted this recommendation and entered a final order on March 23, 1998, awarding the contract to Automated Wagering and dismissing GTECH's bid protest. GTECH then filed this appeal.

II.
The issue on appeal is whether an administrative agency can properly correct errors in the competitive bidding process by referring the proposals back to the same evaluation committee after committee members have testified in a bid protest hearing. To properly address the issue, we must consider the statutory procedures for adjudicating a bid protest and the role of the evaluation committee in the present case.
A state agency must adjudicate a bid protest by the formal process outlined in the Administrative Procedure Act. Section 120.57(3)(d)3., Florida Statutes (Supp. 1996) provides that if a bid protest involves a disputed issue of material fact, the agency shall refer the matter to the Division of Administrative Hearings.[1] The administrative *619 law judge must then conduct a de novo hearing on the protest. See § 120.57(3)(f), Fla. Stat. (Supp.1996); State Contracting and Eng'g Corp. v. Department of Transp., 709 So.2d 607 (Fla. 1st DCA 1998); see also William E. Williams and Vikki R. Shirley, Legislative Reform of Disputed Competitive Procurement Decisions, Fla. Bar J., March 1997, at p. 45. The burden is on the party protesting the award of the bid to establish a ground for invalidating the award.
If the agency intends to accept a proposal by a competitive bidder, as it did in the present case, the administrative law judge must determine "[w]hether the agency's proposed action is contrary to the agency's governing statutes, the agency's rules or policies, or the bid or proposal specifications." See § 120.57(3)(f), Fla. Stat. (Supp. 1996); State Contracting and Eng'g Corp., 709 So.2d at 609. Section 120.57(3)(f) also defines the standard of proof for a bid protest involving the acceptance of a competitive bid. As explained in the statute, the "standard of proof for such proceedings shall be whether the proposed agency action was clearly erroneous, contrary to competition, arbitrary, or capricious."
As with other formal hearings under section 120.57, the order by the administrative law judge in a bid protest proceeding is a recommended order. Section 120.57(1)(i) states in material part that the administrative law judge "shall complete and submit to the agency and all parties a recommended order consisting of findings of fact [and] conclusions of law." The role of the administrative law judge is not to decide the outcome of the proceeding, but rather to make a "recommended disposition" to the agency. See § 120.57(1)(i), Fla. Stat. (Supp.1996).
As with recommended orders in other formal hearings, the agency may reject the administrative law judge's findings of fact in a bid protest only if the findings of fact are not supported by competent and substantial evidence or if the proceedings did not comply with essential requirements of law. See § 120.57(1)(j) Fla. Stat. (Supp. 1996). Subject to these exceptions, the fact-finding process in a bid protest proceeding is conducted by an independent judge who is not connected with the agency. The agency does have authority to "reject or modify the conclusions of law and interpretation of administrative rules over which it has substantive jurisdiction." See 120.57(1)(j), Fla. Stat. (Supp.1996); State Contracting and Eng'g Corp., 709 So.2d at 609. When the agency has made a final decision according to these procedures, the decision is subject to judicial review.
Section 120.68(7) defines the standards that apply in the review of administrative decisions. In this case, the appeal is based on a challenge to the remedy used to correct errors in the first bid protest proceeding. We have held that the remedy for a violation of contract procurement procedures is within the discretion of the agency. See Moore v. Department of Health and Rehabilitative Servs., 596 So.2d 759 (Fla. 1st DCA 1992); Procacci v. Department of Health and Rehabilitative Servs., 603 So.2d 1299 (Fla. 1st DCA 1992). Consequently, we must review the Department's decision by the abuse of discretion standard. See § 120.68(7)(e), Fla. Stat. (1997).

III.
GTECH contends that the Department violated its governing statutes and rules by referring the proposals back to the same evaluation committee. The principal argument on this point is that the amounts of the proposals were sealed according to section 287.057, Florida Statutes, and were not to be opened until after the committee members had completed their evaluation. GTECH maintains that the Department could not properly refer the proposals back to the same evaluation committee after the first hearing, because, *620 by that time, the committee members knew the amount of each proposal.
Although section 287.057, Florida Statutes requires certain competitive bids to be sealed, it does not establish relative time periods for opening the bids. Section 1.7 of the request for proposals states that the bid amounts shall remain sealed until after the committee has submitted its technical scores, but that was done in the present case. The requirement that the bid amounts be sealed has served its purpose. We should not construe this requirement so narrowly that it defeats a subsequent effort to correct an error in the process.
Moreover, GTECH's argument on this point is inconsistent with its request to refer the proposals to a new evaluation committee. The bid amounts are now public record. If disclosure of the amounts is prejudicial in some way, the harm would be no less for an evaluation by a new committee than it was for the existing committee.
In our view, the decision to refer the proposals back to the committee was a reasonable exercise of the Department's authority. Typical remedies for a violation of the procurement procedures include the reopening of the bids or the referral of the proposals to a new committee, see Moore, but these remedies are not exclusive. Administrative agencies certainly have discretion to employ less drastic measures when appropriate. In the present case, the bidding process was protracted and complicated. The decision to refer the proposals back to the evaluation committee enabled the Department to correct its errors without the need to repeat the bidding process and the entire bid protest proceeding. We cannot say that this decision was an abuse of discretion.

IV.
GTECH also contends that the Department's decision to refer the contract proposals back to the same committee members resulted in a deprivation of its right to due process of law. The argument on this point is that the committee members lost their neutrality once they were forced to defend their decision in the first bid protest. The significance of this point in GTECH's view, is that the committee controlled the selection of the provider. Therefore, GTECH maintains that the decision to refer the proposals back to the same evaluation committee resulted in a deprivation of its right to an impartial decision maker.
The fallacy of this argument is that the proposed decision to select a provider cannot be equated with the final decision in the bid protest. Although the committee members had a great deal of control over the proposed selection of the provider, they had no control over the proceeding in which that selection was challenged. The committee members did not participate in the decision on the bid protest, and the record reveals that GTECH's due process rights were fully protected in the bid protest proceeding. The proposed decision to award the contract to Automated Wagering was tested in a formal hearing before a neutral administrative law judge whose recommended order was then reviewed by the Secretary of the Lottery. When the Secretary rendered the final order on behalf of the Department, she was obligated to defer to the administrative law judge, not the committee.
It is well established that an administrative agency may not deprive a person of a right or benefit without due process of law. See Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Procedural due process includes the right to reasonable notice and an opportunity to be heard, see Goss v. Lopez, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975), as well as a right to a decision by an impartial tribunal. See Ward v. Village of Monroeville, 409 U.S. 57, 93 S.Ct. 80, 34 L.Ed.2d 267 (1972); Ridgewood Properties, Inc. v. Department *621 of Community Affairs, 562 So.2d 322 (Fla. 1990). In the present case, the Department afforded GTECH a full and fair opportunity to contest the proposed agency action on any relevant ground, including the potential bias of the evaluation committee members.
Under the general scheme of the Administrative Procedure Act, the agency makes a decision first and then grants any affected party the right to a hearing in which the validity of the agency's action is tested. The hearing procedures in the Act are designed to ensure that the parties will be afforded due process of law before the agency makes a final decision. See State Road Dep't v. Cone Bros. Contracting Co., 207 So.2d 489 (Fla. 1st DCA 1968). As we explained in Department of General Servs. v. Willis, 344 So.2d 580, 591 (Fla. 1st DCA 1977), the hearing requirement in the Act "independently serves the public interest by providing a forum to expose, inform and challenge agency policy and discretion." Here, the parties were afforded due process of law in that they were allowed to present evidence and argument in a bid protest hearing before the proposed action became final.
GTECH's argument that the alleged bias of the committee members prevented a fair decision is based on a mistaken view of the committee's role in the procurement process. The committee initially selected a provider based on its evaluation of the proposals, and, as GTECH argues, the Secretary of the Lottery had little power to disagree with the selection. However, the entire process of selecting a provider was merely a preliminary decision, which was yet to be tested by the agency in the formal administrative process. Section 120.57(3)(f), Florida Statutes characterizes the decision to accept a proposal by a competitive bidder as a "proposed" action.
The Secretary of the Lottery did not make a final decision on the selection of a provider until after it had afforded GTECH notice and an opportunity to be heard in two bid protest hearings. The issue of alleged bias was presented in the second bid protest hearing and the administrative law judge expressly found that the committee members were not biased. Moreover, the validity of the decision to award the contract to Automated Wagering was determined by the administrative law judge, not by the committee. When the Secretary of the Lottery approved the recommendation by the administrative law judge, she was acting in a quasi-judicial capacity. At that point, she was not required to defer to the evaluation committee.
The Secretary of the Lottery carried out different functions at different points in the process, but that did not violate the due process rights of the parties. To the contrary, the right to due process of law is not abridged merely because the head of an administrative agency has exercised executive and quasi-judicial functions in the same case. See Withrow v. Larkin, 421 U.S. 35, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975); Hortonville Joint Sch. Dist. No. 1 v. Hortonville Educ. Ass'n, 426 U.S. 482, 96 S.Ct. 2308, 49 L.Ed.2d 1 (1976); Kenneth Culp Davis and Richard J. Pierce, Jr., Administrative Law Treatise, § 9.9 (1994).
We acknowledge that the head of an administrative agency might be disqualified for potential bias under the circumstances of a particular case. For example, in Ridgewood Properties, Inc., the supreme court held that the Secretary of the Department of Community Affairs could not make the final decision in an adjudicatory proceeding because he had given substantive testimony in the formal hearing. The distinguishing factor in Ridgewood is that adjudication was made by a person who was biased or at least potentially biased. In the present case there is no claim that the Secretary of the Lottery did anything that impaired the fairness of the proceeding. Instead, GTECH's due process argument is based on a claim that the committee members were biased because they had previously testified in a bid protest *622 hearing. As previously explained, however, the committee members did not act in a quasi-judicial capacity, and they did not make the final decision.

V.
For these reasons, we conclude that the Department did not violate the applicable procurement procedures or the constitutional rights of the parties by referring the proposals back to the same evaluation committee. We have carefully considered all of the other arguments in the briefs, and find no basis for reversal. Consequently, we affirm the final order by the Department awarding the contract to Automated Wagering and dismissing GTECH's bid protest.
Affirmed.
WOLF, J., CONCURS.
MINER, J., DISSENTS WITH OPINION.
MINER, J., dissenting.
Because I have serious misgivings regarding several aspects of the process by which the contract under review was awarded, I respectfully disagree with the ultimate conclusion reached by my esteemed colleagues, and accordingly, dissent.
The contract at issue here is one that would provide administrative services to the Florida Lottery. Appellants represent that this contract is, if not the largest, one of the largest public services procurement contracts awarded by the State and such fact is not in dispute.
With respect to the procurement of contractual services and commodities by the State, the Florida Legislature has prescribed the parameters within which such activities must take place:
The Legislature recognizes that fair and open competition is a basic tenet of public procurement; that such competition reduces the appearance and opportunity for favoritism and inspires public confidence that contracts are awarded equitably and economically; and that documentation of the acts taken and effective monitoring mechanisms are important means of curbing any improprieties and establishing public confidence in the process by which commodities and contractual services are procured. It is essential to the effective and ethical procurement of commodities and contractual services that there be a system of uniform procedures to be utilized by state agencies in managing and procuring commodities and contractual services; that detailed justification of agency decisions in the procurement of commodities and contractual services be maintained; and that adherence by the agency and the contractor to specific ethical considerations be required.
§ 287.001, Fla. Stat. (1997) (emphasis added). I would remand this case back to the Department of Lottery to begin the whole RFP process anew because I believe that "[t]he fairness of the proceedings or the correctness of the action may have been impaired by a material error in procedure or a failure to follow prescribed procedure." § 120.68(7)(c), Fla. Stat. (1997).
As I review the entire history of these proceedings, it seems obvious to me that certain aspects of them are not such as would be likely to inspire public confidence in the integrity of the process that resulted in the decision to award the lottery administrative services contract to AWI. I believe that, in sum, the numerous irregularities and questionable procedures below amounted to a "material error in procedure" and warrant a return to square one.
It is beyond question that the Legislature has decreed that the competition for such contractual awards must be fair and open, both in fact and in appearance, in order to eliminate favoritism and to inspire public confidence in the process. If the events I will outline below do not all fail the fairness in fact test, they certainly do *623 not achieve a passing grade on the fairness in appearance test.
While I do not intend to dwell overlong on dates, for purposes of this dissent, certain dates do stand out. As required by law, on September 29, 1995, the Florida Department of Lottery issued a request for proposals to provide administrative services to the Lottery. On November 1 of that same year AWI, the incumbent provider of such services to the Florida Lottery, commenced to provide these same services for the Arizona Lottery where it encountered almost immediate problems.
On December 15, 1995, both parties to this appeal submitted their proposals. The AWI proposal relied heavily on its new Arizona operation and the proposal included the assurance that it had not missed a contracted deadline. This proposal also relied heavily on a relationship AWI had with Electronic Data Systems (EDS), which entity was to provide persons and expertise to service the Florida Lottery contract. Only six months after AWI began its contracted services with the Arizona Lottery, the State of Arizona terminated that contract.
On May 7, 1996, officials at the Florida Lottery found the bids of both AWI and Gtech responsive and responsible. The following day, EDS informed AWI's parent company that it was in arrears in its obligation to EDS in the sum of $20.6 million. One week after the Florida Lottery determined that AWI's bid was responsive and responsible, the lottery of the State of Minnesota withheld payment to AWI and thereafter announced that AWI's contract to run the Minnesota Lottery would not be renewed. The following month, EDS cancelled its master service agreement with AWI which led to litigation between EDS and AWI. In September 1996, the State of Kentucky Lottery broke off negotiations with AWI because of the unsettled relationship between AWI and EDS.
Shortly after AWI and Gtech submitted their proposals, and as required by law, a committee made up of three Lottery employees and three others was appointed to evaluate and numerically score the proposals and to recommend to the Lottery Secretary which bidder should receive the disputed contract. The Secretary was then required to contract with the bidder recommended by the evaluation committee.
Some nine months elapsed between the proposal submission date and the time the evaluation committee began its deliberations. Because of a "no-update" policy adopted by the Lottery, the evaluation committee members were unaware of the administrative difficulties encountered by AWI in Arizona, Minnesota, and Kentucky. Likewise, they were unaware that participation of EDS employees who were to play a pivotal role in AWI's administration of the Florida Lottery was on hold, so to speak, pending resolution of the dispute between AWI and EDS. Whether or not such disclosures, had they been permitted by the Florida Lottery officials to be made, would have affected evaluation committee scoring of the contending proposals, one can only speculate based on the record before us. However, in my view, the "noupdate" condition imposed by Lottery officials hardly comports with the fair and open competition "tenet" that would inspire public confidence that the Lottery contract would be awarded "equitably and economically." Indeed, on the record before us, I would find the imposition of such condition to amount to a manifest abuse of discretion.
In any event, the evaluation committee gave the higher score to the AWI proposal, and on October 31, 1996, the Lottery Secretary announced her intention to award the contract to AWI. On that same date, the bid amounts of the competing vendors were also announced. Within a week thereafter, Gtech filed a bid protest, AWI intervened, and the matter was placed in the hands of an administrative law judge (ALJ). Prior to a hearing on *624 Gtech's bid protest, AWI settled its litigation with EDS.
At the hearing on Gtech's bid protest, AWI was permitted to and did call some of the members of the evaluation committee as witnesses in support of its proposal. One committee member, William Hunter, testified as an expert for AWI. After the hearing concluded, the Lottery and AWI submitted a joint proposed order regarding Gtech's bid protest. (Emphasis supplied). If not drafted by a Lottery attorney (Assistant General Counsel Louisa Warren), her name appears on the proposed order.[2]
The ALJ issued his order on Gtech's bid protest in early April 1997. In it, inter alia, he found that certain aspects of the committee's evaluation and scoring of the contending proposals did not comport with the RFP and recommended that the evaluation committee be reconvened to re-evaluate and re-score certain specific aspects of the two proposals and that AWI clarify a portion of its proposal relating to personnel. Thereafter, the Lottery reconvened the original evaluation committee to do as the ALJ had recommended. Re-evaluation and re-scoring of the two proposals produced the same result as before and on September 2, 1997, the Lottery Department again announced the awarding of the contract to AWI. Three days later, Gtech filed its second bid protest asserting several grounds.
One of the most compelling arguments made by Gtech in this regard is that submitting the re-evaluation and re-scoring of those aspects of the two proposals which the ALJ had found to be non-compliant with the RFP to the same committee served to taint the re-evaluation and rescoring. I find such argument to be persuasive, given that only a few weeks earlier, some of the evaluation committee members testified, including one as an expert, in support of the AWI proposal. Although the ALJ found no bias on the part of these evaluators/AWI witnesses in the later evaluation, I believe, at the very least, that the Florida Lottery's collaboration with AWI during these bid protest proceedings gave rise to a presumption of bias and favoritism in the award of the disputed contract to the Lottery's incumbent service provider. Basing a finding of no bias on the testimony of the evaluation committee members that they were not biased in their re-evaluation is, in my view, wholly inadequate to overcome a presumption of bias. Indeed, such testimony defies and belies human nature, understanding, and experience.
Another matter that causes me concern is that the ALJ in the second bid protest hearing (who was the same ALJ who conducted the first hearing) declined to permit Gtech's expert witnesses to testify as to certain relevant technical issues upon which the evaluation committee was focused and which had not been covered during the earlier hearing. It is asserted by Gtech that these witnesses would have testified as to reasons why Gtech's proposal was superior to that of AWI. Interestingly, neither the Lottery nor AWI addressed this matter in their briefs. In my view, Gtech had a right to present evidence that the evaluation committee's rescoring was flawed as to these new issues.
To recap, the reasons why I cannot join my colleagues in an affirmance involve what I perceive to be unfairness, both in fact and in appearance, both to Gtech and to Florida's citizens in certain portions of the proceedings below. I emphasize that my comments herein should not be interpreted as attributing any improper motives *625 or intentional misconduct to any person or persons.
First, I believe that Legislative intent as expressed in the "tenet" contained in section 287.001 has been thwarted in the manner in which the Florida Lottery has handled this matter. As far as Florida's citizens are concerned, I believe that part 2 of the RFP dealing with management requirements, technical specifications, operations and security, marketing, and the like was paramount in importance. During the nine-month lapse that separated bid submissions and evaluating committee deliberations, the Lottery's incumbent service provider encountered all manner of difficulties with its lottery operations in three sister states[3], which fact was never brought to the attention of the evaluation committee thanks to the "no update" policy adopted by Florida Lottery officials. Indeed, it is unclear from the record whether or not the evaluation committee ever found out about these matters until its work was finally concluded.
Secondly, at the very least, the Lottery's decision to resubmit for re-evaluation and re-scoring the two contending proposals to the self-same committee whose members had testified in favor of AWI's proposal during the first bid protest hearing, smacks of rank favoritism and unfairness, both in fact and in appearance, and again runs counter to the "tenet" adopted by the Florida Legislature to govern State procurement of goods and services.
Next, while the participation of the assistant general counsel for the Lottery in the proceedings below is not fully developed in the record, what is known about her relationship with AWI appears to be incompatible with her duties as legal advisor to the Lottery Secretary and, once again, calls forth the legal admonition that lawyers cannot serve two masters. If nothing more, Ms. Warren's activities in the matter suggest the type of partisanship that, in my view, is inconsistent with fairness in appearance. See § 120.66(1), Fla. Stat. (1997).
Lastly, the ALJ's ruling to refuse to permit expert witnesses, whose names appeared on the witness list provided to the Lottery and to AWI, to testify on material matters related to the award of the contract in question was clearly erroneous and amounts to unfairness in fact. While this fact alone may not constitute a material error in procedure that would justify sending this matter back to begin anew, this error, when added to the other fairness failures alluded to above point in only one direction back down whence this appeal emanated. I would send it there.
NOTES
[1] The 1996 revision of section 120.57, Florida Statutes, became effective on October 1, 1996, before the filing of the first bid protest in this case.
[2] During the taking of depositions in connection with this proceeding, the General Counsel and another Lottery official testified that Ms. Warren drafted the order in question. These depositions are not in the record and are the subject of a motion to supplement filed by Gtech. In view of what I believe to be substantive irregularities in the RFP process that got us here, I would grant this motion and get to the bottom of Ms. Warren's participation with AWI and Lottery Secretary Mann.
[3] For example, because of operational problems, AWI had lost its Arizona Lottery contract upon which AWI's proposal for the Florida Lottery was to be modeled.