816 So.2d 648 (2001)
STATE of Florida, DEPARTMENT OF LOTTERY and Automated Wagering International, Inc., Appellants,
v.
GTECH CORPORATION, Appellee.
Nos. 1D00-451, 1D00-578.
District Court of Appeal of Florida, First District.
February 28, 2001.
Opinion on Denial of Rehearing July 17, 2001.
*649 Jeffrey L. Frehn and Katherine E. Giddings, of Katz, Kutter, Haigler, Alderman, Bryant & Yon, P.A., Tallahassee, for Appellants State of Florida, Department of Lottery.
Sylvia H. Walbolt, Martha Harrell Chumbler, and Joseph H. Lang, Jr., of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., Tallahassee, for Appellants Automated Wagering International, Inc.
Thomas Panza, Mark A. Emanuele, and Deborah S. Platz, of Panza, Maurer, Maynard & Neel, Ft. Lauderdale; and John K. Aurell, John R. Beranek, and Martin B. Sipple, of Ausley & McMullen, Tallahassee, for Appellee.
MINER, J.
Albeit involving different issues, this ongoing dispute makes its second appearance before this court. In GTECH v. State, Department of Lottery, 737 So.2d 615 (Fla. 1st DCA 1999) (Gtech I) a divided court held that the Department of Lottery did not violate applicable procurement procedures or due process by referring contending proposals back to an evaluation committee for correction of errors. All the events leading up to the instant dispute over the contract at issue are generally set forth in Gtech I and will be repeated hereafter only as necessary to give perspective to the issues raised in this appeal.
This dispute centers on a contract for administrative services awarded by the Florida Department of Lottery to Automated Wagering International, Inc. (AWI). In Gtech I, all parties agreed that the subject contract was one of the largest, if not the largest, goods and services procurement contract awarded by a state agency.
In 1988, the Department of Lottery (Lottery) entered into a contract with AWI for the implementation and operation of an on-line lottery system in Florida. In 1995, in anticipation of the expiration of that contract, the Lottery issued a Request for Proposals (RFP) for a new on-line lottery system and related services. Only AWI and Gtech responded with proposals. *650 These proposals were submitted to an evaluation committee for the purpose of ranking the contenders, and thereafter a contract for provision of these services was privately negotiated and entered into between the Lottery and AWI. Gtech challenged the ranking procedure, which resulted in the negotiated contract, and the matter was submitted to an administrative law judge, who ultimately upheld such procedure which led to the appeal decided in Gtech I.
After the Lottery and AWI negotiated a contract, Gtech filed the action below that is the subject of the instant appeal. Seeking both declaratory and injunctive relief, Gtech challenges the agreement between the Lottery and AWI on three bases, only one of which is of dispositive consequence here. In its amended complaint below, Gtech alleged that the agreement negotiated between the Lottery and AWI is illegal, null, and void because it omitted or altered certain material provisions required by the RFP and added other provisions never contemplated by the RFP. It further asserted that AWI could not have provided the system and services proposed in its response to the RFP for the price quoted in its proposal. According to Gtech, AWI purposely "low balled" its proposal in order to attain superior ranking over Gtech and then negotiated a contract on much more favorable terms than it initially proposed to the Lottery.
In time, both the Lottery and AWI answered the allegations in Gtech's amended complaint after which Gtech, the Lottery, and AWI filed motions for summary judgment asserting that there were no disputed issues of material fact to be decided but that the resolution of their dispute was a matter of law. A hearing was held on these motions and the trial court granted Gtech's motion and declared the negotiated contract between the Lottery and AWI null and void and permanently enjoined its performance[1]. It is from this judgment *651 that the Lottery and AWI appeal. We affirm the judgment of the trial court.
We begin by noting that this dispute should have been resolved in an administrative tribunal rather than the circuit court. The Administrative Procedure Act affords a procedural mechanism to review any agency decision that affects the substantial interests of a party. See § 120.569, Fla. Stat. Moreover, the Act provides the exclusive remedy for disputes arising in the competitive procurement process. See § 120.57(3), Fla. Stat. Department of Transportation v. Groves-Watkins Constructors, 530 So.2d 912 (Fla. 1988); State Contracting and Engineering Corp. v. Department of Transportation, 709 So.2d 607 (Fla. 1st DCA 1998).
In the case at hand, Gtech argues that it is aggrieved by agency action taken after the completion of the bid protest hearing and appeal. This claim should have been asserted before the agency in the form of a request for an administrative hearing. See Bankers Ins. Co. v. Florida Residential Property & Casualty Under-writing Ass'n, 689 So.2d 1127 (Fla. 1st DCA 1997); State ex rel Department of General Services v. Willis, 344 So.2d 580 (Fla. 1st DCA 1977). Had appellants argued the failure of appellee to exhaust administrative remedies, the trial court would have been required to defer to the agency. Indeed, the trial court would have been precluded from entertaining the merits of the case over such an objection. See Willis. Notwithstanding the foregoing, the circuit court has jurisdiction to entertain actions for declaratory relief. Because there was no objection by appellants to the failure of appellee to exhaust administrative remedies, the point is waived[2].
Our analysis of what we believe to be the dispositive issue involved in this appeal is necessarily framed by consideration of the provision of section 24.102, Florida Statutes, which requires the Lottery to operate as an entrepreneurial business enterprise and to maximize its revenues on the one hand and Chapter 287, Florida Statutes, which governs the procurement by state agencies of goods and services through a system of "fair and open competition" that "inspires public confidence."
Provision 8.7.2. of the RFP involved herein provides, as follows:
If the Secretary determines that the proposals under this RFP are the best method of obtaining the desired gaming system and services, the Secretary shall negotiate a contract with the most highly qualified respondent. Should the Secretary be unable to negotiate with the respondent the conditions in price that the Lottery deems to be fair, competitive, and reasonable, negotiations with that respondent shall be terminated. The Secretary shall then undertake negotiations with the second most qualified respondent. Should the Lottery be unable to negotiate a satisfactory contract with that firm, additional firms may be selected to participate in this negotiation process or negotiations may be reinstated following the original order of priority. Negotiations shall continue until an agreement is reached or all proposals are rejected. The Lottery reserves the right to reject all proposals at any time during negotiations.
Under this provision of the RFP, in order to get to the point of negotiating a final contract for goods and services, the Secretary first had to determine that "the proposals *652 under this RFP are the best method of obtaining the desired gaming system and services." If the AWI proposal was the "best method," then material changes to the proposal in the final contract would seem to be contrary to the finding by the Secretary that AWI's proposal was the "best method." By negotiating several material elements and entering into a contract that was materially different than the AWI proposal, Lottery officials at least implicitly determined that the AWI proposal was not, at contract time, the "best method" for obtaining such goods and services. Thus, it seems to us that the Lottery's interpretation of Provision 8.7.2. of the RFP is contrary to the plain language of that provision in that it does not contemplate carte blanche revisions with the preferred provider, AWI. Instead, it envisions finalizing an agreement by turning the winning proposal into a contract[3].
Influenced perhaps by the fact that all parties were presumably in accord during the summary judgment hearing below that there were no disputed material facts to be resolved, the trial judge found that the contract negotiated by the Lottery and AWI was financially more favorable to AWI than was the proposal which earned AWI most preferred provider status in the first place. In doing so, the court rejected the contention by the Lottery and AWI that they were no longer bound by Florida's statutorily required method of contracting for goods and services as set out in Chapter 287, but rather were free to negotiate without limitation after Gtech was eliminated from the process. The judge then concluded that the Lottery treated AWI, its preferred and longtime vendor, more favorably in the privately negotiated contract "which was not even the subject of the competitive bidding process." We agree.
Common sense alone suggests that in an undertaking of the scope and magnitude of the relationship between the Lottery and a gaming services provider, whether it be AWI, Gtech, or another such entity, the Lottery must be free to determine that RFP proposals either are or are not responsive to its current needs. However, rather than relying on proposals being no longer responsive in its decision to negotiate a new contract with AWI, the Lottery should have rejected both responses under Provision 8.7.2. of the RFP and started anew. To countenance the Lottery's entry into a contract that was materially different than AWI's proposal would encourage responders to RFPs to submit non-competitive, unrealistic proposals solely for the purpose of receiving the highest ranking for subsequent negotiations. It seems to us that such a procedure is at odds with the proscriptions of Chapter 287 and is not likely to inspire public confidence in the fairness of the process or that the Lottery has entered into the most beneficial agreement.
In affirming summary judgment for Gtech, we acknowledge a concern that our decision might, but should not, encourage losing vendors to employ delaying tactics to take unfair advantage of the vendor ranking process by resorting to administrative challenges and appellate proceedings thereby prolonging the time between achieving preferred provider status and the actual entry of a contract. There are public policy considerations at play here: 1) to ensure realistic, competitive responses to RFPs, and 2) to prevent unnecessary delay thereby and to award the most responsive *653 proposer the first crack at negotiating a final agreement.
Appellants take the position that appellee, Gtech, is the cause of the four-year delay that rendered AWI's proposal so outdated that material changes in the final contract had to be made to meet the Lottery's needs. However, the record before us reflects that Gtech, while unsuccessful in some of its contentions, did not raise any claims during the protracted period from response submission to contract entry that were completely without merit. Indeed, some of Gtech's challenges were successful and we are not prepared to hold that a party to a legal dispute should be penalized for seeking redress, provided such is not undertaken in bad faith or with frivolity. Again, losing vendors should not take comfort in this opinion as encouraging prolonging a process such as this in an attempt to render a winning proposal outdated thereby placing the issuer of an RFP in the position of having to begin the acquisition of goods and services process anew.
To summarize the above, it seems clear to us that the pivotal issue before the trial court and in this appeal is whether the Lottery can treat the RFP process as little more than a ranking tool to determine a preferred provider and then negotiate a contract with that provider with little or no concern for the original proposal of that preferred provider. The issue is not to what extent the contract entered into between the Lottery and AWI materially differed from the proposal initially submitted by AWI, which issue would require a factual determination and render inappropriate the summary judgment awarded Gtech below. Rather, what was at issue here was whether the Lottery and AWI were free to negotiate a contract without limitation once the competitive responder Gtech was eliminated by virtue of its less-competitive response to the RFP. Given this view of the primary issue presented, no factual determination was required.
Further, it seems to us that to hold otherwise would be to approve the use by the Lottery of the RFP process for ranking purposes only and would result in a disincentive for responding vendors to submit accurate and responsible responses to RFPs. We hold that Gtech was entitled to rely on the RFP process in submitting a responsive proposal under Florida's system of competitive bidding and that the Lottery now cannot ignore those laws in reaching a new agreement which may in the final analysis bear little resemblance to the proposal that earned AWI preferred provider status in the first instance.
Next, we are not persuaded by Appellants' arguments that the type of contract involved here is the same as ones for provision of legal or engineering services or the like which may be statutorily acquired through a process of direct negotiations without complying with requirements of Chapter 287. Having an attorney or an engineer or a landscape architect on board, as it were, is light-years away from awarding a multi-million dollar contract for furnishing the gaming system that makes Florida's lottery work.
Finally, we are cognizant of the fact that affirming the trial court's judgment will not, nor should it, result in the award of a gaming contract to Gtech. It is of no moment to us which vendor is successful in securing said contract. Our only concern is that the procedure utilized in the award comport with the requirements imposed by Chapter 287, Florida Statutes, from which mandate the Lottery is not exempt. To some, this decision will be interpreted as penalizing AWI for the shortcomings of the process which resulted in this dispute. To others, the prospect of returning to ground zero will be frustrating, at best. *654 However, we believe that fundamental fairness requires the decision we reach today. We ascribe no intentional wrongdoing to any party to this dispute. The failure here seems to us to be one of commitment, rather than conscience.
AFFIRMED.
BOOTH, J., concurs; KAHN, J., dissents with opinion.
KAHN, J., dissenting.
I conclude that this case turns on the question of whether Specification 8.7.2 of the Lottery's Request for Proposals (RFP) is valid. Neither the court below, nor the majority, has undertaken to strike down that specification of the RFP. Because I conclude that the specification is valid, I would uphold the contract negotiated between the Lottery and AWI.
Specification 8.7.2 is set out in full in the majority opinion. Op. at 651. The specification closely resembles the language of Rule 53ER87-13(5)(i), Florida Administrative Code (replaced by 53ER97-39(5)(i)5, F.A.C.). In particular, both the administrative rule and the RFP direct the Secretary of the Lottery to negotiate a contract with the most highly qualified firm. Both the rule and the RFP envision the prospect of failed negotiations, because they both direct that if the Secretary is unable to negotiate successfully with the most highly ranked firm, those negotiations shall be terminated and the Secretary "shall then undertake negotiations with the second-most qualified firm." 53ER87-13(5)(i)5, F.A.C. Because the rule and the RFP both contemplate failed negotiations, I have no alternative but to conclude that the RFP envisioned negotiations of substantive terms such as price and implementation plans. I would find, therefore, that Specification 8.7.2 is lawful, and that the Secretary of the Department of the Lottery followed the requirements of this provision by engaging in negotiations, ultimately successful, with AWI.
The Department of the Lottery is uniquely endowed by the Legislature. Specifically, the Legislature has recognized that the Department of the Lottery should function "as much as possible in the manner of an entrepreneurial business enterprise." § 24.102(2)(b), Fla. Stat. (1995). The Legislature has also recognized "that structures and procedures appropriate to the performance of other governmental functions are not necessarily appropriate to the operation of a state lottery." Id. Moreover, the Lottery is legislatively authorized to "adopt rules providing alternative procurement procedures." § 24.105(14), Fla. Stat. (1995). The Legislature clearly intended the Lottery to function, to the extent possible, as a business. Indeed, the primary purpose of the Lottery is to make money so that the people of Florida may "benefit from significant additional moneys for education...." § 24.102(1), Fla. Stat. (1995). Given the statutes and rules applicable to the Lottery's procurement function, the contract negotiated by the Lottery should be upheld absent a finding illegality, fraud, oppression, or misconduct. See Department of Transp. v. Groves Watkins, 530 So.2d 912, 913 (Fla.1988); cf. Brasfield & Gorrie General Contractor, Inc. v. Ajax Constr. Co., Inc., 627 So.2d 1200 (Fla. 1st DCA 1993)(noting in dicta, that city's negotiations with the highest ranked bidder, where such negotiations altered the terms of an invitation for bids, were not arbitrary and capricious.) The trial court made no such finding.
Even if some legal challenge could be framed to the validity of Specification 8.7.2, GTECH has waived the right to make such a challenge. GTECH has never administratively challenged the Lottery's *655 authority to negotiate a contract pursuant to the specifications of the RFP. As a sophisticated bidder, GTECH could not have failed to recognize that Specification 8.7.2 contemplated substantive negotiations, and further contemplated the possibility of successive negotiations based upon a ranking of bidders. Nevertheless, GTECH failed to file a protest directed toward that particular specification. The Administrative Procedure Act requires that a notice of protest of specifications contained in a RFP shall be filed by a dissatisfied prospective bidder "within 72 hours after the receipt of notice of the project plans and specifications or intended project plans and specifications in an invitation to bid or request for proposals, and the formal written protest shall be filed within ten days after the date the notice of protest is filed." § 120.53(5)(b), Fla. Stat. (1995). Because GTECH was on notice that the RFP contemplated substantive negotiations between the Lottery and the highest ranked bidder, it was required by statutory law to protest the specification, if it felt such specification was contrary to Florida procurement law.
GTECH argues that it did not interpret the negotiation provision as permitting negotiation on items such as scope of work and price. This argument is unavailing, particularly in the context of the Lottery's need to implement a highly sophisticated and expansive on-line lottery system. During the time period in which this case has transpired, the area of information technology has undergone incredible changes in almost unimaginably short time intervals. I find it inconceivable that anyone reading Specification 8.7.2 would not conclude that the Lottery might reserve the right to negotiate scope of work, and thereby, unavoidably, negotiate price. I would therefore conclude that GTECH has waived its right to challenge Specification 8.7.2.
The final order affirmed by the majority of this panel is troubling. The order does not set aside specification 8.7.2, but merely finds that the Lottery treated AWI "more favorably in the negotiated contract which was not even the subject of the competitive bidding process." It is, of course, self evident that the ultimately negotiated contract was not the subject of a competitive bidding process. This is the nature of the RFP here at issue. Certainly, the Secretary's right to negotiate under the RFP could not be made subject to a competitive bidding process. Moreover, no one reading the final judgment can determine what the Lottery's authority now is. The trial court did not strike down or judicially alter Specification 8.7.2. How, then, is the Lottery to know whether its negotiations will later be found by a circuit judge to be unacceptable? This sort of uncertainty is the antithesis of the entrepreneurial business operation envisioned by the Legislature for the Florida Lottery. Again, no court should strike down this contract absent a finding that the contract transgresses the limitations imposed by Groves-Watkins. For these reasons, I would reverse the order on review and find that the contract negotiated between the Lottery and AWI is valid according to Florida law and the Request for Proposals.

ON MOTIONS FOR REHEARING, REHEARING EN BANC, AND FOR CERTIFICATION
PER CURIAM.
Appellants, State of Florida, Department of the Lottery, and Automated Wagering International, Inc., have each filed motions seeking rehearing, rehearing en banc, or certification of questions to the Florida Supreme Court. In response to these motions, we certify the following *656 questions as being of great public importance:
1. Does the Department of the Lottery, pursuant to a specification included in a request for proposals, have the authority to negotiate substantive contract terms with the most highly qualified respondent, and pursuant to such negotiations, award a contract that must be upheld absent a finding of illegality, fraud, oppression, or misconduct?
2. Where the negotiation clause in a request for proposals indicates that the agency will negotiate a contract with the most highly qualified respondent, including conditions and price that the agency deems to be fair, competitive, and reasonable, may an unsuccessful proposer that has failed to administratively contest the negotiation clause later attack the contract in circuit court on the basis that the negotiations conducted pursuant to the terms of that clause were impermissible?
We deny the motions for rehearing and for rehearing en banc.
BOOTH and KAHN, JJ., concur.
MINER, J., specially concurring with opinion.
MINER, J., specially concurring with opinion.
Because the issues presented herein need to be resolved without further delay, I concur in the denial of the motions for rehearing and rehearing en banc. I also concur in the substance of the questions certified to the Florida Supreme Court although, were the decision mine alone to make, I might frame them a bit differently.
NOTES
[1] The trial court's finding and reasoning supporting the Final Summary Judgment for Gtech are, as follows:

The case concerns a challenge to the March 9, 1999 contract now in existence between the Florida Lottery and its longtime service/hardware provider, AWI. There are no material fact issues as to the basic legal question. That question is whether the Lottery could eliminate all but the lowest bidder in an administrative RFP process and then later privately negotiate the mandatory and price terms of the contract which have been set out in the AWI proposal by which it gained the status of a winning bidder. It is clear that the negotiated contract was financially more favorable to AWI than was the proposal by which it became the winning bidder.
The Lottery and AWI contend that they were no longer bound by the competitive bidding statutes but were free to negotiate without limitation after Gtech was eliminated from the process. The court finds this position contrary to Florida law and untenable under the concept of fair competition among bidders. Long ago the Florida Supreme Court made it clear that public bidding laws were designed to prevent "opportunities for favoritism, whether any favoritism is actually practiced or not ... [.]" Wester v. Belote, 103 Fla. 976, 138 So. 721, 724 (1931). This basic tenant [sic] remains the law of Florida and the facts are uncontested that the Lottery treated its preferred vendor, AWI, more favorably in the negotiated contract which was not even the subject of the competitive bidding process.
Wherefore, the motions for summary judgment as to Count II filed by AWI and the Lottery are denied, and Gtech's cross-motion for summary judgment as to Count II is granted. The contract is declared null and void and the defendants are permanently enjoined from proceeding under the March 9, 1999 contract. This order shall not take effect until five days after the date it is rendered in order to allow the Lottery and/or AWI to perfect an appeal, if they so desire. Further, this order does not prohibit the Lottery from continuing to operate on an interim basis under its emergency powers.
[2] Additionally, we note that the issue of standing was not properly preserved for review and therefore we do not specifically address this issue.
[3] A close reading of the majority opinion and dissent herein will reflect that the judges in the majority do not interpret specification 8.7.2 as expansively as does our esteemed dissenting colleague.