955 So.2d 647 (2007)
EMERALD CORRECTIONAL MANAGEMENT, Appellant,
v.
BAY COUNTY BOARD OF COUNTY COMMISSIONERS, Bay County, a political subdivision of the State of Florida, and Corrections Corporation of America, Appellees.
No. 1D06-2754.
District Court of Appeal of Florida, First District.
May 4, 2007.
*648 Obed Dorceus, Tallahassee, for Appellant.
William C. Henry, Panama City, for Appellee Bay County; and Clifford C. Higby, Panama City, for Appellee Corrections Corporation of America.
WOLF, J.
Emerald Correctional Management (Emerald) challenges a final order dismissing *649 appellant's complaint with prejudice for failing to state a cause of action concerning appellee Bay County Board of County Commissioners' (the Board) decision to award a contract to Corrections Corporation of America (CCA) pursuant to a request for proposals. The issues before the court are: (1) whether the trial court erroneously relied on the broad discretion retained by the county in the request for proposal process in denying appellant's complaint alleging improper manipulation of the request for proposal process by the county, and (2) whether appellant sufficiently stated a cause of action premised on the county's alleged violation of Florida's "Sunshine Law."
We find no merit in the Sunshine Law complaint and, because there is no allegation of improper communication between two members of the same public board, uphold the trial court's dismissal as to that issue without further comment. We find, however, that the trial court erred in dismissing appellant's complaints regarding improper favoritism in the award of the contract regarding the Bay County Jail.
On June 21, 2005, appellee, Bay County (the County) issued a Request for Proposals (RFP) asking potential contractors to submit proposals to design, build, and finance an expansion of Bay County's existing correctional facility. The RFP further required that the winning contractor manage the existing facility, the expanded facility, a court holding, and a vehicle sally port facility proximal to the Bay County Courthouse. Pursuant to the RFP, a bidder was required to provide detailed breakdowns of said costs on two forms that were also provided by the County. The RFP included the following clause:
The Board of County Commissioners reserves the right to accept or reject any and all proposals in whole or in part, to waive informalities in the process, to obtain new proposals, or to postpone the opening pursuant to the Board's purchasing policies. Bids shall be valid to Bay County for a period of one hundred and twenty days after the opening.
In addition, the RFP expressly stated:
3.0 PROPOSAL INFORMATION
. . . .
3.5 The County reserves the right to accept or reject in part or in whole any or all proposals submitted.
3.6 The County shall accept all proposals properly submitted. However, the County reserves the right to request clarifications or corrections to proposals. Requests for clarifications or corrections by the County shall be in writing.
. . . .
4.0 BASIS FOR AWARD
4.1 The Contract will generally be awarded to the respondent that has the highest score on a structured evaluation tool approved by the Bay County Board of County Commissioners. The intent is to select the respondent considered to offer the best overall total value to the County.
4.2 There is no obligation on the part of the County to award the proposal to the lowest priced respondent, and the County reserves the right to award the proposal to the respondent submitting the best overall responsive proposal with a resulting negotiated agreement which is most advantageous and in the best interest of Bay County, and to waive any irregularity or technicality in the proposals received. Bay County shall be the sole judge of the proposal and the resulting negotiating agreement that is in its *650 best interest and its decision shall be final.
Sealed proposals were due on September 15, 2005. Two bidders, Emerald and Intervener CCA, submitted proposals in response to the County's request for proposals and both proposals were determined by the County to be responsive.
In its response to the RFP, appellant submitted a construction only cost of $35,404,000 to Bay County on the County's own required proposal cost form, for the construction of the project. A breakdown of appellant's construction cost was also provided by appellant on the County's cost breakdown form as required. CCA, in its response to the RFP, submitted a construction only cost of $41,598,836 on the proposal cost form provided by the County. Upon receipt of the proposals, the County issued a "Request for Clarifications" by submitting separate questions to appellant and to CCA regarding their individual proposals.
On December 20, 2005, relying on new numbers submitted by CCA in response to the County's Request for Clarifications, the County created a "New Jail Analysis" and presented the analysis to the Board. Based on CCA's new submission, in the New Jail Analysis presented to the Board before the vote on the two proposals, the County restructured CCA's cost proposal and reduced the original construction price by $5,109,859 to $36,488,977. This resulted in a presentation to the Board of an estimated total price for the project of $117,164,000.00 for appellant and $114,254,417 for CCA. Following the presentation, the Board directed the County to begin negotiating a contract with CCA.
On January 6, 2006, appellant filed a formal notice of protest challenging the County's decision to negotiate a contract with CCA and the County's intended decision to award the contract to CCA. Upon receipt of the formal request, the protest was presented to the Board, which voted to continue the negotiations with CCA. No findings were issued. On January 27, 2006, the county manager issued a letter denying appellant's protest based on the recommendation of the county purchasing agent.
On February 8, 2006, appellant filed a six-count complaint challenging the County's award to CCA. We find that the trial court properly dismissed all of the counts except Counts II and IV. Count II, in pertinent part, alleged that the County permitted CCA to add a clause in their bid proposal forgoing the setting of an established cost pursuant to fluctuating construction costs. As such, appellant alleged CCA was allowed to tentatively estimate a cost that would later be inflated due to the increasing construction inflation, while appellant was required to submit a set cost estimate that would not be subject to change. Appellant asserts this action unfairly favored CCA in the bid process. Count IV, in pertinent part, alleged that the County's decision to allow CCA to make material changes to its non-responsive proposal was improper.
The County moved to dismiss. The trial court dismissed Count II because "the County is afforded significant discretion in the RFP process, the Court finds that ECM has not shown the probability of success required. . . ." Count IV was dismissed even though the trial court found that Emerald has alleged the County's actions were illegal, arbitrary, and capricious because the trial court reasoned that the County retained its express right in the RFP to maintain sole discretion in rejecting any and all proposals.
While we recognize the wider discretion afforded counties and cities in exercising *651 discretion in accepting or rejecting responses to RFPs, the decisions still must be subject to review to determine whether the governing body acted arbitrarily or capriciously. § 255.20, Fla. Stat. (2005).
Whether a complaint is sufficient to state a cause of action is an issue of law, subject to de novo review. Warren ex rel. Brassell v. K-Mart Corp., 765 So.2d 235, 236 (Fla. 1st DCA 2000). In ruling on a motion to dismiss for failure to state a cause of action, this court is confined to a consideration of the allegations made within the four corners of the complaint. Meadows Cmty. Ass'n, Inc. v. Russell-Tutty, 928 So.2d 1276, 1280 (Fla. 2d DCA 2006). This court must assume that all allegations are true and decide whether the complaint states a cause of action. Id. at 1279. Furthermore, in a bid protest dispute where the petitioner alleges the County abused its discretion and did not comply with the RFP in evaluating proposals and/or the evaluators misinterpreted the RFP, proposal, statute or facts, the reviewing court need not second guess the members of the evaluation committee to determine whether reasonable persons might reach a contrary result. Scientific Games, Inc. v. Dittler Bros., Inc., 586 So.2d 1128, 1131 (Fla. 1st DCA 1991). Rather, a "public body has wide discretion" in the bidding process and "its decision, when based on an honest exercise" of the discretion, should not be overturned even if reasonable persons might disagree. See Sutron Corp. v. Lake Co. Water Auth., 870 So.2d 930, 932 (Fla. 5th DCA 2004) (explaining that discretion of public entity to solicit, accept or reject contract bids should not be interfered with by the courts absent a showing of dishonesty, illegality, fraud, oppression or misconduct).
In the instant case, appellant asserts the County's acceptance of CCA's proposal did not comply with the RFP because (1) the County unfairly amended and manipulated CCA's proposal to bring down the overall cost of the project; (2) the County accepted CCA's proposal even though the proposal materially altered the termination terms as set out in the RFP; and (3) the County accepted CCA's proposal even though the proposal did not set a construction cost as required by the RFP.
In contrast to bids, a RFP is used when the public authority is incapable of completely defining the scope of work required, when the service may be provided in several different ways, when the qualifications and quality of service are considered the primary factors instead of price, or when responses contain varying levels of service which may require subsequent negotiation and specificity. Sys. Dev. Corp. v. Dep't of Health & Rehabilitative Servs., 423 So.2d 433, 434 (Fla. 1st DCA 1982). In addition, the consideration of a response to a request for bid is controlled by the estimated costs, whereas, the response for a request for a proposal is controlled by estimated cost and technical excellence in the field. Id. Awards of contracts are generally based not solely on price, but on the results of an extensive evaluation which includes criteria, qualifications, experience, methodology, management, approach, and responsiveness to the RFP, etc. Id. Further, at the conclusion of the RFP process, the procurement officer will seek authorization from the governing body to begin negotiating the terms of the contract with the highest ranking bidder. H. Gore Enters., Inc. v. City of W. Palm Beach, 617 So.2d 1160, 1161 (Fla. 4th DCA 1993) (holding that no binding contract had been formed upon the first commission vote, because the award of the proposal was simply a selection of a vendor to negotiate a contract with). The contract is, thus, not formed until after the negotiation process. Id.
Section 255.20, Florida Statutes (2006), provides in pertinent part:

*652 (1) A county, municipality, special district as defined in chapter 189, or other political subdivision of the state seeking to construct or improve a public building, structure, or other public construction works must competitively award to an appropriately licensed contractor each project that is estimated in accordance with generally accepted cost-accounting principles to have total construction project costs of more than $200,000. . . . As used in this section, the term "competitively award" means to award contracts based on the submission of sealed bids, proposals submitted in response to a request for proposal, proposals submitted in response to a request for qualifications, or proposals submitted for competitive negotiation. This subsection expressly allows contracts for construction management services, design/build contracts, continuation contracts based on unit prices, and any other contract arrangement with a private sector contractor permitted by any applicable municipal or county ordinance, by district resolution, or by state law. For purposes of this section, construction costs include the cost of all labor, except inmate labor, and include the cost of equipment and materials to be used in the construction of the project. Subject to the provisions of subsection (3), the county, municipality, special district, or other political subdivision may establish, by municipal or county ordinance or special district resolution, procedures for conducting the bidding process.
(Emphasis added).
Section 255.20 expressly requires counties to engage in a competitive bidding or proposal process when undertaking new projects estimated at over $200,000. The statute further affords counties discretion in adopting express procedures for conducting the proposal process through the use of their county or municipal ordinances. However, Bay County has not adopted any ordinances dealing with the competitive bidding or proposal process for a public service facility such as the one involved in this dispute.[1] However, based on the statute's wording and relevant case law, absent the adoption of an express ordinance, the County should be held to an arbitrary and capricious competitive bidding standard:
Competitive bidding statutes are enacted for the protection of the public. They create a system by which goods or services required by public authorities may be acquired at the lowest possible cost. The system confers upon both the contractor and the public authority reciprocal benefits, and exacts from each them reciprocal obligations. The bidder is assured fair consideration of his offer, and is guaranteed the contract if his is the lowest and best bid received. The principal benefit flowing to the public authority is the opportunity of purchasing the goods and services required by it at the best price obtainable. Under this system, the public authority may not arbitrarily or capriciously discriminate between bidders, or make the award on the basis of personal preference.
Hotel China & Glassware Co. v. Bd. of Pub. Instruction of Alachua County, 130 So.2d 78, 81 (Fla. 1st DCA 1961) (emphasis added). See also City of Sweetwater v. *653 Solo Constr. Corp., 823 So.2d 798 (Fla. 3d DCA 2002) (applying this arbitrary and capricious standard to RFPs as well as bids). Whether the Board acted arbitrarily is generally controlled by a determination of whether the Board complied with its own proposal criteria as outlined in the RFP. Id. at 802 (holding that the criteria espoused in the published invitation to bidders controlled the analysis of whether the city acted in an arbitrary manner). However, because section 255.20, Florida Statutes, specifically requires counties to "competitively award" contracts based on a fair review of the proposals, the Board cannot be allowed to write out this competitive requirement by affording itself overly broad discretion to capriciously and arbitrarily award contracts without established criteria.
If appellant's complaint is taken as true, the County's actions  i.e., requesting modifications of figures from one bidding party but not the other and then relying on those modifications and accepting non-compliant termination and price setting clauses  amounted to impermissible favoritism. City of Sweetwater, 823 So.2d at 798 (holding that a public body's actions affording one party an unfair advantage violates public policy and statutory law). As such, appellant has stated a cause of action based on its assertions of favoritism, and reversal for consideration of the merits of the claim is warranted.
Furthermore, a public body is not entitled to omit or alter material provisions required by the RFP because in doing so the public body fails to "inspire public confidence in the fairness of the [RFP] process." State, Dep't of Lottery v. Gtech Corp., 816 So.2d 648 (Fla. 1st DCA 2001). In Gtech, this court reviewed a trial court's grant of summary judgment in favor of an unsuccessful RFP respondent. Id. at 649. The underlying action, like the action in the instant case, sought declaratory relief and requested the trial court nullify a contract between the chosen competitor and the State. Id. Appellant in Gtech asserted that the State had improperly accepted a proposal from the competition that materially altered or omitted material provisions of the RFP. Id. at 650-51. This court affirmed the trial court's grant of summary judgment in favor of Gtech and noted:
Common sense alone suggests that . . . the Lottery must be free to determine that RFP proposals either are or are not responsive to its current needs. However, rather than relying on proposals being no longer responsive in its decision to negotiate a new contract with AWI, the Lottery should have rejected both responses . . . and started anew. To countenance the Lottery's entry into a contract that was materially different than AWI's proposal would encourage responders to RFPs to submit non-competitive, unrealistic proposals solely for the purpose of receiving the highest ranking for subsequent negotiations. It seems to us that such a procedure is at odds with the proscriptions of Chapter 287 and is not likely to inspire public confidence in the fairness of the process or that the Lottery has entered into the most beneficial agreement.
. . . .
To summarize the above, it seems clear to us that the pivotal issue before the trial court and in this appeal is whether the Lottery can treat the RFP process as little more than a ranking tool to determine a preferred provider and then negotiate a contract with that provider with little or no concern for the original proposal of that preferred provider. . . . *654 [W]hat was at issue here was whether the Lottery and AWI were free to negotiate a contract without limitation once the competitive responder Gtech was eliminated by virtue of its less-competitive response to the RFP.
Further, it seems to us that to hold otherwise would be to approve the use by the Lottery of the RFP process for ranking purposes only and would result in a disincentive for responding vendors to submit accurate and responsible responses to RFPs. We hold that Gtech was entitled to rely on the RFP process in submitting a responsive proposal under Florida's system of competitive bidding and that the Lottery now cannot ignore those laws in reaching a new agreement which may in the final analysis bear little resemblance to the proposal that earned AWI preferred provider status in the first instance.
Id. at 652-53.
The RFP in this case attempted to provide the County the right to accept or reject any portion of the proposals, and thus, the County asserts they were entitled to accept the proposal and then later reject the termination portion of the proposal. According to this court's reasoning in Gtech, this presumption is incorrect. The County's actions in this regard violate the statutory protection afforded the competitive award process.
If, as alleged in the complaint, the county accepted terms from one party which were not contemplated by the RFP, the County would have engaged in favoritism warned against in Gtech.[2] We, therefore, affirm in part and reverse in part for further proceedings.
BARFIELD and VAN NORTWICK, JJ., concur.
NOTES
[1] Bay County has listed on its website the procedures for entering RFPs and the steps taken in the proposal process; however, this website does not amount to an ordinance as required by the statute, and thus, this court may not consider the criteria listed on the website.
[2] We do note, however, that in a hearing on the motion to dismiss, the County presented compelling evidence of its non-arbitrary action in choosing CCA's proposal over appellant's proposal. Namely, CCA had apparently proposed building onto the existing jail and utilizing the services that already existed while appellant had suggested building a stand alone facility with no connection to the current facilities. Further, CCA had apparently proposed building a holding zone for prisoners attached to the courthouse, while appellant had not. However, this court is confined to the four corners of the complaint and may not consider this evidence in its analysis. Meadows Cmty. Ass'n, Inc., 928 So.2d at 1279.