PER CURIAM.
This is an appeal from a final agency order of the Florida Department of Community Affairs [the Department] which denied an application for a funding grant under the Florida Community Development Corporation Support and Assistance Program. The applicant Martin Luther King Economic Development Corporation [MLK], whose application was denied below, appeals this order. We find no merit in MLK’s points on appeal and affirm.
At the outset, MLK attacks certain aspects of the Department’s rules for evaluating grant applications under the above-stated community assistance program on the ground that the rules are allegedly inconsistent with the enabling legislation. It contends that the subject rules do not require the department secretary to “consider” the relative degree of distress of the target area served by the community development corporation, as provided by Section 290.036(5), Florida Statutes (1985). We cannot agree because Rule 9B-14.0081 of the Florida Administrative Code specifically provides that all grant applicants are to be ranked according to a formula indicating the relative degree of distress of the target area served by the grant applicant. In order to even be eligible for a grant, an applicant must satisfy a certain minimum threshold distress score — which must be set so that the number of eligible applicants is no more than twice the number of grants available. In a crowded field of applicants, this provision may eliminate altogether the least distressed applicants; in a small field of applicants, as here, this provision may not eliminate any applicant. In any event, however, the rule requires the department secretary to “consider” the relative degree of distress of the target area served by the grant applicant and is in no way inconsistent with Section 290.036(5), Florida Statutes (1985).
The balance of MLK’s points on appeal attack certain decisions made by the Department in scoring MLK’s grant application. The Department awarded sixteen grants pursuant to a competitive grant application process based on a complicated scoring system. MLK was awarded seventy-nine points out of a possible 200 points and was ranked twenty-second out of thirty applicants; as scored by the Department, MLK was thirty-three points behind the sixteenth and lowest successful grant applicant. MLK claims, in essence, that the Department made three erroneous scoring decisions which deprived MLK of certain scoring points — at least thirty-four — so as to defeat MLK’s grant application.
First, MLK urges that the Department applied an improper legal standard in evaluating the technical assistance indicated in MLK’s application. The Department gave MLK ten points for its available technical assistance, rather than twenty points as requested, because the subject technical assistance was not directly related to the development of an income-generating venture, as detailed in the grant application guide available to grant applicants. We see no error in the Department’s use of this guide criteria, as the guide properly explains and supplements the Department’s rules for grant applications and, in essence, is incorporated by such rules.
Second, MLK urges that the Department erroneously awarded only nineteen points, rather than the fifty points to which it was allegedly entitled under the Department’s rules, for leveraged administrative funding. The Department gave MLK credit for $105,505 for such leveraged administrative funding; MLK claims it was entitled to a $301,284 credit for such funding. We have reviewed the complicated documentation for such leveraged funding as submitted by MLK (R.212-242), and are unable to say that the Department abused its discretion in determining that only $105,505 of leveraged funding was established by these documents. Indeed, much of the documentation does not match MLK’s claims of committed funds, as the Department properly determined below.
*387 Third, MLK urges that the Department’s refusal to give any scoring points for its Capital Bank Building was erroneous; MLK urges, in essence, that it was entitled to fifty points for this building because the building had a value of $200,000. We cannot agree for two reasons. (1) MLK’s attached documentation falls woefully short of establishing that the building had a value of $200,000. MLK merely attached a deed to the property showing a $1.00 nominal consideration for a conveyance of same (R.267), an undated lease of the property for $18,000 a year rent (R.268-69), and a 2V2-year-old Miami Times newspaper article stating that Capital Bank had conveyed the property “with an estimated market value of over $200,000” to MLK, and that the building “was approved as a corporate contribution by the Florida Department of Community Affairs_” (R.270). None of the above can be considered adequate proof of the property’s market value, much less that the property had a market value of $200,000 at the time of the application. The only item which even speaks to the market-value issue is the above 2V2-year-old newspaper article, and, obviously, a newspaper article cannot constitute competent proof of the value of real estate. See Southern Bell Tel. & Tel. Co. v. County of Dade, 275 So.2d 4, 8 (Fla.1973); City of Tampa v. Colgan, 121 Fla. 218, 163 So. 577 (1935); Dade County v. Miami Herald Publishing Co., 285 So.2d 671 (Fla. 3d DCA 1973), cert. denied, 293 So.2d 713 (Fla.1974). (2) Even if the $200,000 market value for this property be deemed established by the above documentation, MLK would only have been entitled to twenty-five additional scoring points, not fifty points as claimed, because, according to the Department’s rules, one point per $5,000 is awarded for the first $50,000 of committed funds [ten points] and one point per $10,000 is awarded for the next $150,000 of committed funds [fifteen points]. (R.18). This twenty-five point increase would have been insufficient, in any event, to have qualified MLK for a grant in this case — as it was thirty-three points behind the sixteenth and lowest successful grant applicant in this case.
For the above-stated reasons, the final agency order under review is, in all respects,
Affirmed.
HUBBART and NESBITT, JJ., concur.