991 So.2d 899 (2008)
CREATIVE CHOICE XXV, LTD., Appellant,
v.
FLORIDA HOUSING FINANCE CORPORATION, Appellee.
No. 1D07-2747.
District Court of Appeal of Florida, First District.
July 17, 2008.
*900 Michael P. Donaldson and Christine R. Davis of Carlton, Fields, P.A. Tallahassee, for Appellant.
Wellington H. Meffert, II, General Counsel of Florida Housing Finance Corporation, for Appellee.
BENTON, J.
Creative Choice XXV, Ltd., (Creative Choice) appeals Florida Housing Finance Corporation's (FHFC's) order denying its request for Community Workforce Housing Innovation Pilot Program (CWHIPP) funding on grounds Creative Choice's loan application was ineligible for consideration pursuant to section 420.5095(4), Florida Statutes (2006). We conclude that Creative Choice's proposal was entitled to consideration, and reverse and remand accordingly.
We have jurisdiction. See Fla. R.App. P. 9.030(b)(1)(C) (2008). "A party who is adversely affected by final agency action is entitled to judicial review." § 120.68, Fla. Stat. (2007). See, e.g., Martin Luther King Econ. Dev. Corp. v. Dep't of Cmty. Affairs, 528 So.2d 385, 386 (Fla. 3d DCA 1988) (appeal from denial of application for a funding grant).
CWHIPP was created by the Legislature in 2006 to provide affordable "workforce housing" for essential services personnel for whom the high cost of housing makes home ownershipand even renting housingproblematic. The Legislature authorized FHFC to administer the program and to allocate $50 million in funding to public-private entities in order to make affordable housing available to Florida's workforce.
In response to FHFC's request for proposals, Creative Choice applied for a $5 *901 million CWHIPP loan for its Villas at Palm Bay project, a 160-unit apartment complex in Brevard County. Creative Choice's response to the request for proposals described the Villas at Palm Bay project as recently completed, stated that it "will be available for immediate occupancy" although it was still "in the process of obtaining final certificates of occupancy," and represented that an FHFC loan would "allow the development to provide housing [rented and owned] at payments that do not exceed 30% of an eligible household's income."
FHFC determined that Creative Choice's request for funding was ineligible for consideration pursuant to section 420.5095(4), Florida Statutes (2006), because the housing was "already built." FHFC did not score or in any other way further evaluate the loan application Creative Choice made in response to the request for proposals. Challenging denial of its loan application on this categorical basis, Creative Choice filed a timely formal written protest, after giving the requisite notice of its intent to file. In the absence of any dispute of material fact, an informal hearing ensued which led to FHFC's final order concluding that FHFC had acted within the parameters of the statute and applicable rules in determining that Creative Choice's project was ineligible for consideration for CWHIPP funding.
Section 420.5095 governs FHFC's administration of CWHIPP. At the outset, we acknowledge that "[a]n agency's interpretation of the statute that it is charged with enforcing is entitled to great deference." Level 3 Commc'ns, LLC v. Jacobs, 841 So.2d 447, 450 (Fla.2003) (citing BellSouth Telecomms., Inc. v. Johnson, 708 So.2d 594, 596 (Fla.1998)). Section 420.5095 provides, in pertinent part:
(4) The Florida Housing Finance Corporation is authorized to provide Community Workforce Housing Innovation Pilot Program loans to an applicant for construction or rehabilitation of workforce housing in eligible areas. The corporation shall establish a funding process and selection criteria by rule or request for proposals. This funding is intended to be used with other public and private sector resources.
...
(7) Projects shall receive priority consideration for funding where:
...
(b) Projects are innovative and include new construction or rehabilitation, mixed-income housing, or commercial and housing mixed-use elements and those that promote homeownership....
...
(11) Projects may include manufactured housing constructed after June 1994 and installed in accordance with mobile home installation standards of the Department of Highway Safety and Motor Vehicles.
§ 420.5095, Fla. Stat. (2006) (emphasis added). The agency's "interpretation will be upheld if the agency's construction falls within the permissible range of interpretations. If, however, the agency's interpretation conflicts with the plain and ordinary intent of the law, judicial deference need not be given to it." Colbert v. Dep't of Health, 890 So.2d 1165, 1166 (Fla. 1st DCA 2004) (citations omitted).
We start with the statutory language, the "plain and ordinary intent of the law." Colbert, 890 So.2d at 1166. The statutory language contemplates funding for rehabilitation of existing housing: subsection (4) authorizes FHFC to make loans "for construction or rehabilitation of workforce housing." The present case poses the question whether subsection (4) also contemplates funding to make existing *902 construction available as "workforce housing," although it has not been "rehabilitated." In answering the question, we consider the statute as a whole. See, e.g., Okeechobee Health Care v. Collins, 726 So.2d 775, 776 (Fla. 1st DCA 1998) ("Especially when enacted into law simultaneously, subsections of the same statute must be construed in pari materia." (citing Wiggins v. B & L Servs., Inc., 701 So.2d 570 (Fla. 1st DCA 1997))).
Subsection (7)(b)'s directive that priority be given to "new construction" necessarily implies that construction other than new construction should also be considered for funding, albeit without being afforded any priority. The Legislature did not, in subsection (4), limit the term "construction" with the word "new." The omission of the qualifier "new" in subsection (4) contrasts with the language of subsection (7)(b) of the statute, where the Legislature did modify the term "construction" with the word "new." We are bound to presume exclusion of the word "new" in subsection (4) was intentional. See Cason v. Crosby, 892 So.2d 536, 537 (Fla. 1st DCA 2005) ("It is a general canon of statutory construction that, when the legislature includes particular language in one section of a statute but not in another section of the same statute, the omitted language is presumed to have been excluded intentionally.").
In addition, subsection (11) contemplates projects that include manufactured housing constructed after June 1994. This, too, militates in favor of reading the statute so that existing construction, at least manufactured housing completed after June 1994, may be considered for CWHIPP funding.
In short, we are unable to read section 420.5095(4), Florida Statutes (2006), as forbidding consideration of existing construction without doing violence to the meaning of the statute as a whole.
"If the agency's interpretation is within the range of possible and reasonable interpretations, it is not clearly erroneous and should be affirmed," Fla. Dep't of Educ. v. Cooper, 858 So.2d 394, 396 (Fla. 1st DCA 2003), but "judicial adherence to the agency's view is not demanded when it is contrary to the statute's plain meaning." Werner v. Dep't of Ins. & Treasurer, 689 So.2d 1211, 1214 (Fla. 1st DCA 1997) (quoting PAC for Equal. v. Dep't of State, Fla. Elections Comm'n, 542 So.2d 459, 460 (Fla. 2d DCA 1989)).
Sullivan v. Fla. Dep't of Envtl. Prot., 890 So.2d 417, 420 (Fla. 1st DCA 2004). The statute plainly envisions consideration of all construction, new and old, for possible CWHIPP funding.
On remand, priority consideration for "new construction" or other factors, alone or in combination, may preclude FHFC's making a CWHIPP loan to Creative Choice. We do not decide those questions. But FHFC's failure to consider Creative Choice's proposal at all was "[o]utside the range of discretion delegated to the agency by law." § 120.68(7)(e)1., Fla. Stat. (2007).
Reversed and remanded.
BROWNING, C.J., and VAN NORTWICK, J., concur.