ROBERTS, C.J.
This appeal involves an unsuccessful bid protest by the appellant, AT & T Corporation, following a decision by the appellee, Department of Management Services (the Department), to award the contract for MyFloridaNet-2 (MFN-2) to the appellee, CR MSA, LLC, a. wholly owned subsidiary of the Harris Corporation (CR MSA/Harris).

History of the Case

The Department operates and manages the SUNCOM network, Florida’s state en *854 terprise telecommunications system. See § 282.703, Fla. Stat. The Department’s existing management contract with AT & T Services, Inc., known as “MyFloridaNet” (MFN-1), expired in September 2016. On June 6, 2014, the Department advertised an Invitation to Negotiate (ITN), which solicited proposals from vendors interested in participating in competitive negotiations for the award of a contract for a telecommunications infrastructure data network to be known as MFN-2. AT & T and CR MSA/Harris responded to the ITN and were advanced to negotiations. After the Department posted a Notice of Intent to Award the contract to CR MSA/Harris, AT & T filed a bid protest with the Department. The Department forwarded the protest to the Division of Administrative Hearings (DOAH) wherein a final hearing was held. The Administrative Law Judge (ALJ) entered a Recommended Order to dismiss the protest. AT & T filed timely exceptions to the Recommended Order, and the Department entered a Final Order adopting the Recommended Order in its entirety and denying the protest. AT & T seeks review of the Department’s Final Order.
Under an overarching theme that the Department restricted fair and open competition, AT & T identifies three specific points of error in the MFN-2 ITN process: (1) the Department erred by inviting CR MSA/Harris to negotiate without first determining whether CR MSA/Harris was a qualified and responsive vendor; (2) the limited responsiveness review that the Department did conduct should have led to a finding that CR MSA/Harris was non-responsive; and (3) the Départment exacerbated these errors by materially changing the ITN during negotiations to give CR MSA/Harris a competitive advantage and by failing to publish those changes to the Vendor Bid System (VBS). AT & T argues that these errors require reversal of the Final Order and a remand to the Department for rebidding. We disagree and affirm the Final Order on appeal.

Standard of Review

Following AT & T’s bid protest, the ALJ was obliged to conduct a de novo proceeding to determine whether the Department’s Notice of Intent to Award a contract to CR MSA/Harris was contrary to the Department’s rules, statutes, or the ITN specifications. § 120.57(3)(f), Fla. Stat. (2015). AT & T bore the burden of proof to show, by a preponderance of the evidence, that the award was clearly erroneous, contrary to competition, arbitrary, or capricious. § 120.57(3)(f), Fla. Stat. (2015). The Department had the ability to reject any of the ALJ’s findings of fact that were not supported by competent, substantial evidence and was also not required to defer to the ALJ on issues of law.
Judicial review of final agency action arising from a bid protest is governed- by section 120.68, Florida Statutes (2016). Administrative conclusions of law are reviewed de novo, while findings of fact are reviewed for competent, substantial evidence. McAlpin v. Criminal Justice Standards & Training Comm’n, 155 So.3d 416, 420 (Fla. 1st DCA 2014). In the context of bid protests, this Court has stated, “[A] ‘public body has wide discretion’ in the bidding process and ‘its decision, when based on an honest exercise’ of the discretion, should not be overturned even if reasonable persons might disagree.” Emerald Corr. Mgmt. v. Bay Cty. Bd. of Cty. Comm’rs, 955 So.2d 647, 651 (Fla. 1st DCA 2007) (citation omitted).

The ITN Process

Chapter 287, Florida Statutes (2014), provides “a system of uniform procedures to be utilized by state agencies in managing and procuring commodities and con *855 tractual services” to protect the public by promoting “fair and open competition,” thereby reducing the appearance and opportunity for favoritism and misconduct. § 287.001, Fla. Stat. (2014). . Under section 287.057, Florida Statutes (2014), an agency seeking to procure commodities or contractual services exceeding $35,000 may elect to use either an Invitation to Bid (ITB), a Request for Proposal (RFP) or, as here, an ITN. The ITN process was created as a distinctly more flexible process than the RFP or ITB processes and gives an agency the means “to - determine the best method for achieving a specific goal or solving a particular problem” and. to identify “one or more responsive vendors with which the agency may' negotiate in order to receive the best value.” § 287.057(l)(c), Fla. Stat. (2014). Relevant to ITNs, section 287.057(l)(c) provides, in part,
2. The invitation to negotiate must describe the questions being explored, the facts being sought, and the specific goals or problems that are the subject of the solicitation.
3. The criteria that will be used for determining the acceptability of the reply and guiding the selection- of the vendors with which the agency will negotiate must be specified. The evaluation criteria must' include consideration of prior relevant experience of the vendor.
4. The agency shall evaluate replies against all evaluation criteria set forth in the invitation to negotiate in order to establish a competitive range of replies reasonably susceptible of award. , The agency may select one or more vendors within the competitive range with which to commence negotiations. After negotiations are conducted, the agency shall award the contract to the responsible and responsiye vendor that the agency determines will provide the best value to the state, based on the selection criteria.
§ 287.057(l)(c)2.-4., Fla. Stat. (2014).
Section 287.012(26), Florida Statutes (2014), defines “Responsive bid” to mean, “[A] bid, or proposal, or reply submitted by a responsive and responsible vendor whieh conforms in all material respects to the solicitation.”

MFN-2 ITN

The Department elected to utilize the ITN process and, pursuant to section 287.057(l)(c)2., listed specific goals in the ITN, which included the goal, among others, of “[-s]eek[ing] to maintain or reduce the current total cost for each customer.” The questions being explored in the ITN included how to obtain services in a cost-effective manner. The ITN was to be conducted in three phases: solicitation, evaluation, and negotiation. Before proceeding into the evaluation phase, the Department performed an initial determination of responsiveness via .a “pass/fail” checklist and found both vendors responsive. AT & T argues .that this responsiveness assessment was inadequate because the Department failed to analyze whether the vendors were responsiye to all material aspects of the ITN. AT & T further argues that under the “limited” responsiveness assessment that the Department did conduct, CR MSA/Harris was non-responsive.
Corporate Identity Issues ,
AT & T’s latter argument relates to the ITN’s experience and bonding requirements that were assessed -on the pass/fail checklist, AT & T argues the Department erred in relying on Harris’s qualifications instead of solely relying on the qualifications of the subsidiary CR MSA to meet the experience and bonding requirements. The ALJ properly rejected AT & T’s “corporate identity issues,” finding the Department complied with the *856 terms of the ITN and Florida law in determining both vendors were responsive as to these issues and finding the Department treated the vendors equally in this regard. We find no basis to disturb the underlying findings regarding the “corporate identity issues,” which were supported by competent, substantial evidence, and the logical conclusions drawn therefrom. We affirm the determination that CR MSA/Harris was responsive to the experience and bonding requirements.

Statement of Work Issues

The majority of AT & T’s arguments involve the ITN’s “Statement of Work” and AT & T’s belief that the Department should have performed a responsiveness assessment of the vendors’ initial replies to the Statement of Work. Had the Department done so, AT & T argues, CR MSA/Harris would have been found non-responsive and would not have been invited to negotiate, leaving AT & T with a clear path to the contract award. We disagree with AT & T’s restructuring of the ITN process to fit its argument.
The Statement of Work was a 192-page attachment to the ITN that contained the ITN’s technical requirements. Section 2.7, Core Functionality and Related Services, included a diagram with ten geographically dispersed “core facilities” throughout the State. Section 2.7.12 stated that a vendor “may propose changes to the selected cities in the diagram section 2.7, but the number of core facilities shall not be altered unless the Respondent includes more core facilities than those provided in MFN.” The Statement of Work also contained a specification for Session Initiation Protocol Core Routing (SCR).
AT & T’s bid protest argued that the Department’s responsiveness review was inadequate because it failed to analyze whether CR MSA/Harris’s initial reply satisfied what it labels the “crucial ten core node minimum” and SCR. The ALJ rejected this argument, finding the Statement of Work requirements were not responsiveness requirements and were instead to be scored by the evaluators. Relying on testimony and evidence, the ALJ properly found that any deficiencies in a vendor’s reply to the Statement of Work requirements would be reflected in a poor scoring of the reply during the evaluation phase and was not a responsiveness issue. As with the corporate identity issues above, we find no basis to disturb the underlying findings regarding the Department’s responsiveness review in this regard, which were supported by competent, substantial evidence, and the logical conclusions drawn therefrom.
AT & T, again .relying on its characterization of the Statement of Work requirements as threshold responsiveness requirements, argues that CR MSA/Harris was non-responsive and the ALJ overstepped his authority by making a post hoc finding that CR MSA/Harris’s initial reply complied with the ten core facility requirement. Once the issue is reviewed objectively, it is clear that there was no impropriety. The ALJ found CR MSA/Harris’s bid proposed eleven core facilities, albeit by using a different label of “aggregation node” for six of the facilities. First, CR MSA/Harris’s labeling did not render its initial reply non-responsive because, as aforementioned, this Statement of Work requirement was not part of the threshold responsiveness review and any deficiency in the reply would have been addressed in scoring during the evaluation phase. Additionally, there was no deficiency because, as the ALJ’s “post hoc” finding recognized, the ITN did not define the terms “core facility,” “core node,” and “aggregation facility” and there was no consensus industry definition of these terms. Most impor *857 tantly, the Department’s evaluator and subject-matter expert testified that, regardless of the label used, each of the facilities proposed by CR MSA/Harris satisfied the ITN’s core facility requirement. We disagree with AT & T’s reliance on Procacci v. Department of Health and Rehabilitative Services to suggest similar impropriety by the ALJ here. 603 So.2d 1299 (Fla. 1st DCA 1992). Procacci is readily distinguishable from this case. The ALJ did not overstep his role because the Department did evaluate the initial replies for responsiveness and determined both parties were responsive before inviting them to negotiate. The ALJ never made an independent responsiveness determination or recommendation. Rather, in the context of addressing AT & T’s argument that the Statement of Work requirements were all responsiveness requirements, the ALJ made a finding, supported by competent, substantial evidence, that CR MSA/Harris’s initial reply materially complied with the ITN, including the Statement of Work requirements, which he expressly found were not responsiveness requirements. We affirm the Final Order with regard to the Statement of Work issues.

The Department’s Negotiations

AT & T next argues that the Department acted contrary to Florida law and the ITN by making material changes—reducing the core facility requirement from ten to five and removing SCR—during the negotiation phase. Considering the issue as framed by the parties before us, we find the Department’s actions in modifying the ITN’s specifications during the negotiation phase did not impede fair and open competition.
As aforementioned, an agency has various tools for competitive procurement. For example, when the agency knows the problem and needs proposals for a solution, the agency may use an RFP. An ITB, also referred to as an Invitation for Bid (IFB), on the other hand, describes the solution or end goal and solicits bids to achieve that goal. See Sys. Dev. Corp. v. Dep’t of Health & Rehab. Servs., 423 So.2d 433, 434 (Fla. 1st DCA 1982): An ITB is a fairly rigid document to' be used when the agency is “capable of specifically defining the scope of work” or “establishing precise specifications defining the actual or group of commodities required.” § 287.057(l)(a), Fla. Stat. (2014).
The ITN process was adopted more recently and has been regarded as a legislative response to this Court’s decision in Department of Lottery v. Gtech Corporation, which found an agency could not treat the RFP process as an initial ranking tool to determine a preferred provider and then negotiate a contract with that provider without limitation and without regard for the original proposal and RFP parameters. 816 So.2d 648 (Fla. 1st DCA 2001). Section 287.012, Florida Statutes (2014), defines “invitation to negotiate” as “a written or electronically posted solicitation for competitive sealed replies to select one or more vendors .with which to commence negotiations for the procurement of commodities or contractual services.” The ITN is a more flexible process and, as its name suggests, relies upon negotiations “with one or more vendors” to “determine the best method for achieving a specific goal or solving a particular problem” and to achieve the “best value” for the State. § 287.057(1)(c), Fla. Stat. (2014).
The MFN-2 ITN alerted the parties that the Department reserved the right to negotiate and to request revised replies. It also provided that the Department had the sole discretion over the decisions made during negotiations and over “whether to provide concurrent public notice of such *858 decision.” In submitting replies to the MFN-2 ITN, the vendors should have been well aware that negotiations would be a part of the process. AT & T suggests that the Department was confined to the ITN specifications as written and that any deviation was improper. While we agree generally that the Department could not make material changes to the ITN during negotiations, the ALJ properly found no material changes were made here. See Tropabest Foods, Inc. v. State, Dep’t of Gen. Srvs., 493 So.2d 50, 52 (Fla. 1st DCA 1986) (defining a material change as one that “gives the bidder a substantial advantage over the other bidders and thereby restricts or stifles competition”). The Department’s revisions to the Statement of Work—reducinjg the number of core facilities and removing SCR—that evolved within the negotiation phase and before the Request for Best and Final Offers did not restrict competition. Both vendors had the opportunity to alter their replies accordingly. The fact that AT & T elected not to do so and attempted to show the Department that more core facilities and SCR were needed for better performance shows that competition remained open and the ITN was functioning as intended. Notably, AT & T elected to remove SCR in its Best and Final Offer, which undermines its previous argument that the Statement of Work requirements were mandatory responsiveness requirements. AT & T’s removal of SCR would render it “non-responsive” under its own argument. The ALJ appropriately determined that the Department engaged in extensive negotiations with both parties in an attempt to arrive at the best value for the State. CR MSA/Harris’s selection as the winning vendor was not due to competitive advantage, but was the product of AT & T voluntarily electing not to modify its initial reply, maintaining its position that the ten core facilities (a design that mirrored the existing system AT & T was providing under MFN-1) was critical to achieving the best results for the State. The fact that the Department opted for a better value is not grounds for protest when the stated goals and questions of the ITN remained unchanged—achieving a highly reliable network that represented the best value to the State. We affirm the Final Order regarding the Department’s ability to make changes to the Statement of Work during negotiations. It is worth noting that our affirmance rests on the record before us and our determination that AT & T was not harmed by the Department’s actions here. We do find compelling AT & T’s argument that such action has a potential chilling effect on third parties who choose not to reply to an ITN upon the belief they cannot meet the ITN specifications as written. As those parties are not before us seeking relief, those concerns are left for another day.
In a similar vein, we have concerns with the ALJ’s alternate rulings regarding waiver. We disagree that AT & T waived any challenge to the Department’s negotiations by failing to file a specifications challenge. AT & T’s issue was not targeted to the Department’s reservation of the right to negotiate, but rather its purported manipulation of negotiation in a manner that impeded competition. AT & T would have had no basis to file a specification challenge. As to the ALJ’s determination that AT & T waived its ability to challenge CR MSA/Harris’s responsiveness by failing to assert a challenge to the Notice of Intent to Negotiate, we have concerns with narrowing the point of entry in this manner. Section 120.57(3), Florida Statutes (2015), provides a seventy-two-hour window after the agency posts notice of a decision/intended decision for “any person who is adversely affected by the agency decision or intended decision” to file a protest. *859 Florida Administrative Code Rule 28-110.002(2) defines “decision or intended decision” to mean: (a) the contents of a solicitation, including addenda, (b) a deterr mination that specified procurement can be made only from a single source, (c) rejecting of a response or all responses to a solicitation, or (d) intention to award a contract as indicated by a posted solicitation tabulation or other written notice. A Notice of Intent to Negotiate is not one of the listed “decisions.” Even if AT & T had a point of entry to challenge CR MSA/Harris’s responsiveness at the Notice of Intent to Negotiate stage, we agree with the ALJ in Global Tel Link Corporation v. Department of Corrections that regardless of other points of entry, under section 287.057(l)(c)4. the Department was statutorily compelled to offer an' opportunity for hearing at the time of the Notice of Intent to Award and the responsiveness of thé winning vendor was an integral part of the decision to award. Case No. 13-3029BID (Fla. DOAH Nov. 1, 2013). While we understand that confining the point of entry to the Notice of Intent to Negotiate would allow potential issues to be resolved early in the process, we can also foresee these types of early challenges frustrating an agency’s ability to complete a procurement. We agree with the reasoning in Global Tel that construing the point of entry so narrowly contravenes the language of the statute. Nonetheless, the Department’s decision to award the contract to CR MSA/Harris was affirmed on the merits such that the ALJ’s alternative rulings regarding AT & T’s waiver are not dispositive to the issues on appeal.
AFFIRMED.
WETHERELL and BILBREY, JJ„ concur.