IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

BROWNSVILLE MANOR, LP,

     Appellant,

v.

REDDING DEVELOPMENT PARTNERS, LLC, HTG HAMMOCK RIDGE, LLC, FLORIDA HOUSING FINANCE CORPORATION, GROVE MANOR PHASE I LTD., JIC GRAND PALMS, LLC, MADISON PALMS, LTD., AND RST THE PINES, LP,

     Appellees.

NOT FINAL UNTIL TIME EXPIRES TO FILE MOTION FOR REHEARING AND DISPOSITION THEREOF IF FILED

CASE NO. 1D16-2553

_____/

Opinion filed August 21, 2017.

An appeal from an order of the Florida Housing Finance Corporation.
Barney Smith, Chair.

Michael P. Donaldson and Christine Davis Graves of Carlton Fields Jorden Burt, P.A., Tallahassee, for Appellant.

Hugh R. Brown, General Counsel; Betty C. Zachem and Marisa G. Button, Assistant General Counsels, Tallahassee, for Appellee Florida Housing Finance Corp.

Maureen M. Daughton of Maureen McCarthy Daughton, LLC, Tallahassee, for Appellee HTG Hammock Ridge.

Douglas P. Manson and Paria Shirzadi of Manson Bolves Donaldson, P.A., Tampa, for Appellee Madison Palms, LTD.

Donna E. Blanton of Radey Law Firm, Tallahassee, for Appellee JIC Grand Palms, LLC.

M. Christopher Bryant of Oertel, Fernandez, Bryant & Atkinson, P.A., Tallahassee, for Appellee Redding Development Partners, LLC.

ROBERTS, J.

The appellant, Brownsville Manor, L.P. (Brownsville), appeals a final order of the appellee, Florida Housing Finance Corporation (Florida Housing), arguing Florida Housing erred by reversing its determination that Brownsville was eligible for federal low-income tax credit funding. We agree and reverse.

*The Competitive Solicitation*

Florida Housing is the entity charged with allocating and distributing low income housing tax credits. Because the demand exceeds the supply, the tax credits are awarded competitively to housing developers for qualifying developments as governed by Chapter 67-60, Florida Administrative Code.

In 2015, Florida Housing issued Request for Application 2015-106, Housing Credit Financing for Affordable Housing Developments Located in Medium and Small Counties (the RFA), in which it expected to have up to $10,763,426 of housing credits available for developments serving families or the elderly to be located in

2

medium counties. There were ninety-eight applications submitted in response to the RFA. The RFA applicants were first deemed eligible or ineligible for consideration for funding. The RFA included a point system in which the applicants received up to a total of twenty-eight points in three areas: (1) general development experience (maximum of five points); (2) local government contributions to the proposed development (maximum of five points); and (3) proximity to services needed by the tenants (maximum of eighteen points). The point totals were used to determine threshold eligibility and to rank the applicants. Because many of the applicants could potentially receive the same point total, the applicants were also assigned a randomly generated lottery number.

Relevant to the instant appeal is the proximity-to-services point category. In order to be eligible for proximity points, an applicant had to submit a Surveyor Certification Form that included a mandatory development location point (DLP). The DLP had to be a single point on the site on or within one hundred feet of the existing residential building or the building to be constructed as part of the proposed development. If a proposed development was a "scattered site,"[1] as was

---

[1] "Scattered sites" are defined in Florida Administrative Code Rule 67-48.002(105) as:

> "Scattered Sites," as applied to a single Development, means a Development site that, when taken as a whole, is comprised of real property that is not contiguous (each such non-contiguous site within a Scattered Site Development, is considered to be a "Scattered Site"). For purposes of this definition "contiguous" means touching at a point or

3

Brownsville's, the RFA stated that the DLP had to be "a single point on the site with the most units that is located within 100 feet of a residential building existing or to be constructed as part of the proposed development." See also Fla. Admin. Code. R. 67-48.002(33). The DLP served as the starting point from which the distance to identified transit and community services was measured. Depending on how far each service was from the DLP, an applicant could receive a decreasing score based on point graduations set forth in the RFA. A medium county applicant had to achieve at least seven total proximity points in order to be considered eligible for funding.

### *Brownsville's Application*

Brownsville sought $1,510,000 in annual allocation of housing credits to finance the construction of an eighty-seven-unit development for seniors in Escambia County. Brownsville proposed a scattered site development consisting of two parcels divided by a publicly-maintained road known as North X Street. The parcel west of North X street was zoned "Commercial" as of the application deadline and was 1.45 acres in size. The parcel east of North X Street was zoned "Heavy Commercial/Light Industrial" as of the application deadline and was approximately

---

along a boundary. Real property is contiguous if the only intervening real property interest is an easement, provided the easement is not a roadway or street. All of the Scattered Sites must be located in the same county.

4

1.99 acres in size. The maximum allowable units under the zoning code was thirty-six units on the 1.45 acre parcel and fifty units on the 1.99 acre parcel. Brownsville elected to site its DLP on the smaller parcel.

In support of its application, Brownsville submitted the required Local Government Verification that the Development is Consistent with Zoning and Land Use Regulations Form. The form was signed by Horace Jones, Escambia County Director of Development. It also submitted the required Surveyor Certification Form and the Acknowledgment and Certification Form, signed under penalty of perjury, which provides assurances the applicant will comply with all of the RFA requirements. Brownsville's application was deemed eligible, and it received the maximum available total score of twenty-eight points (including eighteen proximity points). Of the ninety-eight applications submitted, eighty-eight were found eligible, and nine were selected to receive proposed funding. Brownsville was not selected to receive proposed funding.

*Bid Protest*

Another applicant, Redding Development Partners, LLC (Redding), also received the maximum point score without being selected for funding; however, Redding had a higher lottery number than Brownsville, meaning it was behind Brownsville in the funding queue. Redding filed a formal written protest pursuant to sections 120.569 and 120.57(1) and (3), Florida Statutes (2016), which challenged

5

the eligibility/point distribution of Brownsville as well as several other applicants.[2] Redding claimed that Brownsville should have received zero proximity points and been found ineligible for funding because it failed to comply with the RFA terms in that its selected DLP was not on the parcel with the most proposed residential units.

Brownsville took the position that at the time the DLP was selected, it had not definitively determined the development's site configuration as the RFA did not require the applicants to submit a site plan at the application stage. Brownsville argued it submitted the required forms signed by local government, which demonstrated that its proposed development was consistent with applicable zoning and land-use regulations. It also made clear it intended to comply with all of the requirements of the RFA. Brownsville argued that it intended to pursue "clustering," which was allowed for under Escambia County's Land Use Development Code. A clustering approach would treat Brownsville's two individual parcels as a unified development that would allow up to eighty-seven total units, the majority of which could be placed on the smaller parcel, thus rendering its DLP in compliance with the terms of the RFA. Most importantly, Brownsville argued that this determination would be made at the final site plan approval phase, which occurs during the credit underwriting process, not at the application stage. Brownsville referenced the

---

[2] An RFA is treated as a Request for Proposal for the purposes of a bid protest under section 120.57(3). See Fla. Admin. Code R. 67-60.009(4).

6

language of the RFA, which provided that for scattered site developments, an applicant must demonstrate that the development meets the requirements of the RFA *during the credit underwriting process*.

After an evidentiary hearing, which included testimony from Jones, Florida Housing executives, and Brownsville's representative, the Administrative Law Judge (ALJ) entered a recommended order finding Brownsville's application should be deemed ineligible for funding. Specifically, the ALJ disagreed with Brownsville's decision to rely on the future potential for clustering, finding that while that was a potentially viable process, Brownsville had not started the process before its application and there was no guarantee clustering would be approved as per Jones's testimony that he was not sure if the density transfer was even a viable option. The ALJ determined this was a material, non-waivable deviation from the terms of RFA that rendered Brownsville ineligible for funding. Florida Housing entered a final order adopting the recommended order and determining Brownsville was ineligible for funding.

<u>*Analysis*</u>

This Court's review of final agency action arising from a bid protest is governed by section 120.68(7), Florida Statutes (2016). Section 120.68(7) gives the Court statutory authority to, among other things, remand or set aside agency action if such action depends on findings that are not supported by competent, substantial

7

evidence or an agency's erroneous interpretation of law and a correct interpretation compels a different result. Administrative conclusions of law are subject to *de novo* review, while findings of fact are reviewed for competent, substantial evidence. AT&T Corp. v. State, Dep't of Mgmt. Servs., 201 So. 3d 852, 854 (Fla. 1st DCA 2016).

Florida Housing was required to interpret the RFA consistently with its plain and unambiguous language. Creative Choice XXV, Ltd. v. Fla. Hous. Fin. Corp., 991 So. 2d 899, 901 (Fla. 1st DCA 2008). Brownsville clearly complied with all of the RFA requirements at the application stage by submitting the required forms, providing a DLP, and providing the appropriate assurances that it intended to comply with all of the RFA terms. The ALJ focused on the fact that Brownsville had not commenced the clustering process at the time of application and there was no guarantee that clustering would be approved. However, nothing in the RFA required Brownsville to begin the clustering process or guarantee approval as of the application stage. This is underscored by the fact that an applicant was not required to submit a costly site plan at the application stage. Instead, the configuration of a proposed development would be fleshed out in the final site plan approval process, which occurs after the application stage during the credit underwriting. The RFA's plain language clearly recognized the distinct stages in the process by providing that a scattered site applicant must demonstrate compliance with the RFA "during the

8

credit underwriting process." We disagree with the ALJ's reliance on Jones's testimony as undermining Brownsville's ability to secure approval for clustering. Jones testified that he did not yet know whether clustering would be appropriate for Brownsville's development. This was not an unequivocal statement that clustering was not possible or that Brownsville could not build more than thirty-six units on the smaller parcel. Rather, Jones's testimony illustrates that the true configuration of the proposed development was unknown at the application stage and could not be solidified until after site plan review, which occurs during credit underwriting. Brownsville complied with all that was required of it at the application stage under the plain and unambiguous terms of the RFA. Thus, we reverse the final order as contrary to the RFA and remand with instructions to reinstate Brownsville's eligibility for funding.

REVERSED and REMANDED.

OSTERHAUS and M.K. THOMAS, JJ., CONCUR.