# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D17-4503

_____

HERITAGE OAKS, LLP,

    Appellant,

    v.

MADISON POINTE, LLC,
AMERICAN RESIDENTIAL, and
FLORIDA HOUSING FINANCE
CORPORATION, etc., et al.,

    Appellee.

_____

On appeal from the Florida Housing Finance Corporation.
Bernard Smith, Chair.

July 15, 2019

B.L. THOMAS, J.

Heritage Oaks challenges the final order of the Florida Housing Finance Corporation, adopting the recommended order of an administrative law judge and rescinding an award for funding to construct affordable housing. The corporation determined that Appellant incorrectly answered a material question in the Request for Application.

*Facts*

The Florida Housing Finance Corporation establishes "procedures necessary for proper allocation and distribution of low-

income housing tax credits." § 420.5099(1), Fla. Stat. (2018). Florida Housing periodically administers competitive solicitations through which developers may apply for funding for the new construction or rehabilitation of affordable rental housing. Fla. Admin. Code R. 67-60.001(1).

In 2016, Florida Housing issued an RFA proposing the development of affordable multifamily housing in Broward, Duval, Hillsborough, Orange, Palm Beach, and Pinellas counties. Appellant responded and requested funding for a proposed housing development called Heritage Oaks, which would consist of 85 newly constructed housing units. At the time that Appellant submitted its application, there were occupied housing units on the site. But under the proposed development, these existing units would be demolished to make way for the 85 new units.

Question 5 of the RFA concerned "General Development Information," and under this heading, Question 5.e. was labeled "Number of Units in Proposed Development." Under this subheading, Questions 5.e.(1) and (2) asked for the "total number of units" and the amount of new construction and rehabilitation units[1] in the proposed development. Question 5.e.(3) stated:

"The Applicant must indicate which of the following applies to the occupancy status of any existing units:

(a) Existing units are currently occupied

(b) Existing units are not currently occupied

(c) There are no existing units.

Following the question, the RFA stated "[t]he Applicant should refer to Section Four A.5e.e of the RFA before answering the above question." Section Four of the RFA provided instructions regarding the information required on the RFA. The instructions stated, under Question 5, that "[u]nless stated otherwise, all information requested in the RFA pertains to the

_____

[1] "New construction" units are those that will be built for the proposed development, and "rehabilitation units" are units that are already built and will be refurbished or renovated by the developer for the proposed development.

proposed Development." Regarding the question asking for the occupancy status of existing units, Section Four A.5e.e stated:

> Developments that are tentatively funded will be required to provide to the Credit Underwriter a plan for relocation of existing tenants, as outlined in Item 2.b.(6) of the Applicant Certification and Acknowledgement form. The plan shall provide information regarding the relocation site; accommodations relevant to the needs of the residents and length of time residents will be displaced; moving and storage of the contents of a resident's dwelling unit; as well as the approach to inform and prepare the residents for the rehabilitation activities.

For the occupancy-status question, Appellant responded that there were no existing units.

In 2017, Florida Housing announced its intent to award funding to seven applicants, including Appellant. Appellee Madison Pointe also applied for housing credits in response to the same RFA but was not selected for funding. Appellee filed a notice of protest and petition for formal administrative hearing under section 120.57(3), Florida Statutes, to challenge Florida Housing's funding award to Appellant. Appellee alleged that Appellant gave several inaccurate answers in its application, including its answer that there were "no existing units," when there were existing occupied units on the development site. Appellant intervened in the proceeding. The parties stipulated that if Appellant's application was deemed ineligible, Appellee Madison Pointe's application would be recommended for funding.

At the administrative hearing, the director of Florida Development for Norstar, co-applicant with Appellant, testified that he prepared Appellant's application for funding in response to the RFA. He further testified that he understood the question asking for the occupancy status of any existing units to mean "if there are rehab units, are they occupied?" He testified that his reading was based on the question's subheading, which stated that all questions under that heading referred to the proposed development. He reasoned that an existing unit can only be part of the proposed development if it is to be rehabilitated; an existing unit that will be demolished will not become part of the proposed

3

development. Further, he noted that the instructions to the question state that a developer must inform existing tenants about rehabilitation activities, which he thought validated his interpretation that the question only asked for the occupancy status of existing units to be rehabilitated.

In its recommended order, the administrative law judge found that Appellant's statement on the RFA that there were "no existing units" was a false statement of material fact: "Florida Housing has a material interest in ensuring that tenants located in existing housing units are properly and adequately relocated during the development phase of any Florida Housing-funded development." The recommended order concluded that an incorrect answer regarding the occupancy status "has an adverse effect on the interest of Florida Housing and the public in ensuring the process protects the welfare of the current housing residents," and that Appellant's failure to disclose the existing occupied housing units was a "material deviation from the requirements of the RFA."

The recommended order proposed that Florida Housing enter a final order rescinding the intended award to Appellant and designating Madison Pointe as recipients of the funding. Florida Housing adopted the findings of fact and conclusions of law, ordered its award to Appellant rescinded, and ordered Appellee Madison Pointe as a recipient of funding.

*Analysis*

This court interprets state administrative rules de novo. Art. V, § 21, Fla. Const. "This Court's review of final agency action arising from a bid protest is governed by section 120.68(7), Florida Statutes (2016)." *Brownsville Manor, LP v. Redding Development Partners, LLC*, 224 So. 3d 891, 894 (Fla. 1st DCA 2017). "Section 120.68(7) gives the Court statutory authority to, among other things, remand or set aside agency action if such action depends on findings that are not supported by competent, substantial evidence or an agency's erroneous interpretation of law and a correct interpretation compels a different result." *Id.* Florida Housing is "required to interpret the RFA consistently with its plain and unambiguous language." *Id.* "We must reverse and remand if the agency erroneously interpreted the law and a correct interpretation compels a different result." *Flagship Manor, LLC v.*

4

*Florida Housing Finance Corp.*, 199 So. 3d 1090, 1092 (Fla. 1st DCA 2016) (quoting § 120.68(7)(d), Fla. Stat. (2017)).

The question at issue asked applicants to provide the occupancy status of any existing units. The RFA instructions state that applicants are required to provide the occupancy status of existing units so that the applicant can provide a plan to relocate any tenants currently occupying those existing units. Under Appellant's reading of the RFA, if an existing tenant's unit will be demolished entirely, a developer is not required to plan for that tenant's relocation. We disagree, because such a reading is not reasonable. An agency may not adopt implausible or unreasonable interpretations of an RFA. *See Flagship Manor*, 199 So. 3d at 1093. Florida Housing was correct to interpret "existing units" to mean units existing on the development site at the time of application. Thus, Florida Housing did not err in adopting the recommended order and rejecting Appellant's application.

Appellant also argues that even if it incorrectly stated that there were no existing units, the error was a "minor irregularity" that Florida Housing should have waived. "Florida Housing's regulations give it discretion to ignore 'minor irregularities' in an application." *Flagship Manor*, 199 So. 3d at 1094 *(*citing Fla. Admin. Code R. 67–60.008). "A 'minor irregularity' refers to variation 'that does not provide a competitive advantage or benefit' to the applicant over other applicants." Id. (citing Fla. Admin. Code R. 67–60.002(6)). "Minor irregularities" are errors "that do not result in the omission of any material information." Fla. Admin. Code R. 67-60.008.

But Appellant's inaccurate response to the occupancy-status question resulted in the omission of material information. Thus, the omission was not a minor irregularity.

AFFIRMED.

ROBERTS and OSTERHAUS, JJ., concur.

5

_____

*Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.*

_____

Michael P. Donaldson and Christine Davis Graves of Carlton, Fields, Tallahassee; Scott A. McLaren of Hill Ward Henderson, Tampa, for Appellant.

Hugh R. Brown, General Counsel, Betty C. Zachem, Assistant General Counsel, Florida Housing Finance Corporation, Tallahassee, for Appellee.